# EXHIBIT 1

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| CARL N. MOSLEY, HARRY PATTERSON, LEONARD POTENSKY, JAMAL GARRISON, MICHELLE GARRISON, JOHN MITCHELL, AND RONALD PRESTON, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>v.<br><br>VELOCITY EXPRESS CORPORATION, VELOCITY EXPRESS LEASING, INC., VELOCITY EXPRESS, INC. , and all other subsidiaries or successors,<br><br>                        Defendants. | CIVIL DIVISION<br><br>Class Action<br><br>Collective Action<br><br>Case No.: GD - 09 - 012588<br><br>Code:<br><br><br><br>Filed on behalf of Plaintiffs<br><br>Counsel of Record for this Party:<br>Edward J. Feinstein<br>(PA # 29718)<br>Janice M. Pintar<br>(PA # 207322)<br>Maureen Davidson-Welling<br>(PA # 206751)<br>**STEMBER FEINSTEIN DOYLE &**<br>**PAYNE, LLC**<br>Allegheny Building, 17th floor<br>429 Forbes Avenue<br>Pittsburgh, PA 15219<br>(412) 281-8400 phone<br><br>John Newborg<br>428 Forbes Avenue<br>220 Lawyers Building<br>Pittsburgh, PA 15219<br>(412) 281-1106 phone<br><br>*Counsel for Representative Plaintiffs and the Class* |



09 JUL 10 AM 11: 00

FILED

DEPT OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY

UPSUBKKNNDI
07-10-2009  11:24:31
GD-09-012588

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| CARL N. MOSLEY, HARRY PATTERSON, LEONARD POTENSKY, JAMAL GARRISON, MICHELLE GARRISON, JOHN MITCHELL, AND RONALD PRESTON, on behalf of themselves and all others similarly situated,<br><br>                            Plaintiffs,<br><br>v.<br><br>VELOCITY EXPRESS CORPORATION, VELOCITY EXPRESS LEASING, INC., VELOCITY EXPRESS, INC. , and all other subsidiaries or successors,<br><br>                           Defendants. | CIVIL DIVISION<br><br><br>Class Action<br>Collective Action<br><br><br>Case No.: |

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

                         Lawyer Referral Service
                         Allegheny County Bar Association
                         11th Floor Koppers Building
                         436 Seventh Avenue
                         Pittsburgh, PA 15219
                         Telephone: (412) 261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| CARL N. MOSLEY, HARRY PATTERSON, LEONARD POTENSKY, JAMAL GARRISON, MICHELLE GARRISON, JOHN MITCHELL, AND RONALD PRESTON, on behalf of themselves and all others similarly situated, | CIVIL DIVISION |
| | Class Action |
| | Collective Action |
| Plaintiffs, | Case No.: |
| v. | |
| VELOCITY EXPRESS CORPORATION, VELOCITY EXPRESS LEASING, INC., VELOCITY EXPRESS, INC. , and all other subsidiaries or successors, | |
| Defendants. | |

<u>**COLLECTIVE AND CLASS ACTION COMPLAINT**</u>

**NATURE OF ACTION**

1.    Plaintiffs Carl N. Mosley, Harry Patterson, Leonard Potensky, Jamal Garrison, Michelle Garrison, John Mitchell, and Ronald Preston (collectively "Plaintiffs") individually, and as class representatives on behalf of all others similarly situated, by their attorneys, bring this class and collective action against Defendants Velocity Express Leasing, Inc., Velocity Express, Inc. and Velocity Express Corporation, and all other Subsidiaries or Successors, seeking declaratory relief and to recover for violations of the Fair Labor Standards Act, ERISA, breach of contract, and Pennsylvania wage laws regarding compensation for hours worked.

1

### THE PARTIES

2.      Plaintiff Carl N. Mosley is an adult residing in West Mifflin, PA.  Mosley worked as a pick-up and delivery driver for Defendants between January 2005 and January 2009 at the Northside warehouse location in Allegheny County, Pennsylvania.

3.      Plaintiff Harry Patterson is an adult residing in Bethel Park, PA.  Patterson worked as a pick-up and delivery driver for Defendants between January 2006 and March 2009 at the Northside warehouse location at 929 Beaver Avenue, in Allegheny County, Pennsylvania.

4.      Plaintiff Leonard Potensky is an adult residing at 601 Hemlock Avenue, Pittsburgh, PA 15202 in Allegheny County.   Potensky currently works as a pick-up and delivery driver for Defendants out of their Northside warehouse location in Allegheny County, Pennsylvania and has worked in this capacity since around February 2008.

5.      Plaintiff Jamal Garrison is an adult residing at  3255 Nottingham Dr., Pittsburgh, PA 15235.  Garrison worked as a pick-up and delivery driver for Defendants from 2003 until around November 2008 at their Northside warehouse location in Allegheny County, Pennsylvania.

6.      Plaintiff Michelle Garrison is an adult residing at 3255 Nottingham Dr., Pittsburgh, PA 15235.  Mrs. Garrison worked as a pick-up and delivery driver for Defendants between November 2007 and January 2009 at their Northside warehouse location in Allegheny County, Pennsylvania.

7.      Plaintiff John Mitchell is an adult residing at 804 Parkway Ave. Pittsburgh, PA 15235.  Mitchell worked as a pick-up and delivery driver for Defendants between March 2006 and August 2008 at their Northside warehouse location in Allegheny County, Pennsylvania.

2

8.      Plaintiff Ronald Preston is an adult residing at 1420 Nixon Street, Pittsburgh, PA 15233.  Preston worked as a pick-up and delivery driver for Defendants between March 2008 and April 2009 at their Northside warehouse location in Allegheny County, Pennsylvania.

9.      Defendant Velocity Express Corporation ("VEC") is a Delaware corporation whose registered agent is located at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808. Upon information and belief, VEC conducts business in the Commonwealth of Pennsylvania through direct communications to its employees working in Pennsylvania via written memoranda and by its solicitation of and advertising to potential Pennsylvania customers through its website. VEC also conducts business in the Commonwealth of Pennsylvania through, and as an alter ego of, its subsidiaries VEI and VEL. At all relevant times hereto, VEC was Plaintiffs' employer or joint employer with VEI and/or VEL under state and federal law.

10.      Defendant Velocity Express, Inc. ("VEI") is a Delaware corporation registered to conduct, and which regularly conducts business within the Commonwealth of Pennsylvania. VEI's corporate headquarters are located at One Morningside Drive North, Westport, CT 06880. VEI is a wholly-owned subsidiary of VEC.  At all relevant times hereto, VEI was Plaintiffs' employer or joint employer with VEC and/or VEL under state and federal law.

11.      Defendant Velocity Express Leasing, Inc. ("VEL") is a Delaware corporation registered to conduct, and which regularly conducts business within the Commonwealth of Pennsylvania.  VEL's corporate headquarters are located at One Morningside Drive North, Westport, CT 06880.   VEL is a subsidiary of VEC and VEI. At all relevant times hereto, VEL was Plaintiffs' employer or joint employer with VEC and/or VEI under state and federal law.

3

## STATEMENT OF FACTS ALLEGED

Overview of Velocity's Operations

12.    VEC and its subsidiaries and successors (collectively, "Velocity" or

"Defendants") are engaged in the business of providing regional ground package delivery

services to customers throughout the United States and parts of Canada.

13.    Velocity operates one of the largest nationwide networks of package delivery

services in the United States.  Upon information and belief, it operates out of more than 150

locations throughout the United States, including at least six locations in Pennsylvania.

14.    In the course of its business, Velocity has employed numerous individual pick-up

and delivery drivers to perform the pick-up and delivery of parcels and other items in

Pennsylvania.   Upon information and belief, Velocity presently employs between thirty-five and

fifty-five pick-up and delivery drivers at its Northside location in Pittsburgh, Pennsylvania, and

has employed numerous additional pick-up and delivery drivers at this and other locations within

Pennsylvania during the past three years.

15.    Although Velocity treats its pick-up and delivery drivers as employees, it

misclassifies them as independent contractors for purposes of pay, withholding taxes and

employee benefits.

Velocity Has A History Of Misclassifying Its Drivers

16.    Although Velocity has subsequently changed its name, the status of its drivers as

employees was dealt with in the context of a suit against its predecessor-in-interest, Corporate

Express Delivery Systems. *See Corporate Express Delivery Systems v. National Labor Relations

Board*, 332 NLRB 1522 (2000).   Applying the National Labor Relations Act ("NLRA"), the

National Labor Relations Board ("NLRB") held in that case that Velocity's drivers were

4

employees rather than independent contractors based on the manner in which Velocity treated

them and the drivers' lack of significant entrepreneurial opportunity for gain or loss.

17.    The NLRB's decision was upheld by the United States Court of Appeals for the

District of Columbia Circuit. *See Corporate Express Delivery Systems v. National Labor*

*Relations Board*, 292 F.3d 777 (D.C. Cir. 2002).  The United States Court of Appeals for the

Tenth Circuit also later upheld an award of back-pay against Velocity in light of the NLRB and

D.C. Circuit's determinations.  *See National Labor Relations Board v. Velocity Express, Inc.*,

434 F.3d 1198 (10th Cir. 2006).

18.    Despite these opinions establishing that Plaintiffs and other drivers performing

pick-up and delivery work under Velocity's business model are employees, Velocity has refused

to reclassify its drivers or substantially alter its employment and wage payment practices.

19.    Velocity continues to represent to its pick-up and delivery drivers that they are

independent contractors and to deny them the wage and compensation benefits to which they are

entitled under federal and Pennsylvania state law.

Treatment of Plaintiffs and Other Drivers

20.    Velocity hired Plaintiffs as drivers to pick up and deliver parcels and other items

to its customers on its behalf.  Velocity's primary business is package delivery and Velocity's

employment of Plaintiffs and others as drivers in Pennsylvania was necessary and in furtherance

of its core business function.

21.    Velocity misclassified its pick-up and delivery drivers, including Plaintiffs, as

independent contractors.  As a condition of employment, it required Plaintiffs and other drivers

to sign standardized "Independent Contractor Agreement for Transportation Services" form

contracts (hereinafter, "ICAs") that purport to create an independent contracting relationship

5

between the drivers and VEL. A copy of the ICA provided to drivers in 2009 is attached as

Exhibit 1. A signed copy of the 2009 ICA signed by Plaintiff Potensky is attached as Exhibit 2.

      22.      On information and belief, Velocity has engaged in a common practice

throughout Pennsylvania to misclassify its pick-up and delivery drivers as independent

contractors in order to deny them the wage and compensation benefits to which they are entitled

under federal and Pennsylvania state law.

      23.      Although the ICAs refer to the pick-up and delivery drivers as independent

contractors, Velocity treated and continues to treat its drivers, including Plaintiffs, as employees.

Velocity exercised and continues to exercise substantial control over the manner and means by

which Velocity's drivers perform their work, and Velocity denied and continues to deny its pick-

up and delivery drivers the opportunity for significant entrepreneurial activity.

      24.      Velocity dictates the hours that Plaintiffs and other drivers are required to work.

For instance, Velocity specifies the times that its drivers must come in to load parcels and other

items to be delivered into their vehicles. In addition, Velocity insists that Plaintiffs and other

drivers return in their vehicles after completing their deliveries each day, and has threatened to

fine (through wage deduction) any drivers who fail to comply with this demand. Velocity

requires Plaintiffs and other drivers to submit daily reports of pick-ups and deliveries that have

been performed.

      25.      Velocity dictates the routes that Plaintiffs and other drivers must follow each day

and the number of stops that Plaintiffs are to make on a given route. Velocity does not inform its

drivers in advance of how many parcels or stops they will be required to make, and sometimes

reassigns routes among drivers without prior notice.

6

26.     Velocity required Plaintiffs and other drivers to wear Velocity's uniforms while performing their job duties.  Velocity provided Plaintiffs and other drivers with these uniforms and Velocity deducted amounts weekly from Plaintiffs' and other drivers' pay to cover the costs of the uniforms it provided.

27.     As a condition of employment, Velocity has required Plaintiffs and others drivers to sign lease agreements attached as addenda to the ICAs, thereby agreeing to lease their vehicles to Velocity. Velocity, as the lessee, then provided the vehicles it leased to Plaintiffs and other drivers to do its deliveries.

28.     Velocity has misrepresented through the ICAs that Plaintiffs and other drivers have an ownership interest in their routes and can employ subcontractors to undertake deliveries. In fact, the drivers have no ownership interest in their routes.

29.     For example, Plaintiffs and other drivers who were injured or became unable to work were stripped of their routes by Velocity without being entitled to regularly employ a subcontractor or to sell their routes.

30.     Velocity expected Plaintiffs and other drivers to keep cell phones with them at all times so that Velocity could contact them on the road – at the drivers' expense – to make changes to their pick-up and delivery schedule.

31.     Plaintiffs and other drivers have been required to maintain signs on their vehicles bearing the name and logo of Velocity.

32.     Plaintiffs and other drivers were required by Velocity to submit to random drug tests or face termination.

33.     Velocity expected Plaintiffs and other drivers to abide by the terms and conditions of employment contained in the company handbooks Velocity issued to Plaintiffs and other drivers, as well as to Velocity's acknowledged employees.

<u>Velocity's Payment Practices</u>

34.     Velocity regularly changed Plaintiffs' and other drivers' rate of pay for routes without notice.   Plaintiffs and other drivers generally found out about such changes when they received their paychecks.

35.     Velocity often took money from Plaintiffs' and other drivers' paychecks without explanation.  For instance, Velocity routinely skimmed 2 percent (and later 2.5 percent) of Plaintiffs' and other drivers' gross earnings, but failed to reflect what it had done in the pay stubs it provided to drivers.

36.     Velocity deducted additional amounts from Plaintiffs' and other drivers' paychecks to cover expenses of the business or forced its drivers to pay those expenses out-of-pocket.  For instance, Velocity deducted amounts from its drivers' pay checks to pay for the scanners it "rented" to drivers and required them to utilize, job related disability insurance, cargo loss insurance naming Velocity as an insured, and paycheck processing.

37.     Velocity also instituted a fuel surcharge that it deducted from Plaintiffs' and other drivers' pay checks even though Plaintiffs' and other drivers were forced to pay for their own gas and maintenance of their vehicles.

38.     Plaintiffs and the other drivers had no say in what was deducted from or charged against their paychecks.

39.     Velocity frequently assigned routes to Plaintiffs and other drivers that required them to travel long distances and work in excess of forty (40) hours per week, but Velocity

8

refused to pay overtime for these hours in violation of the Fair Labor Standards Act and
Pennsylvania Minimum Wage Act.

     40.     Velocity did not contribute to Plaintiffs' or the other drivers' Social Security
payments and did not provide workers' compensation coverage for its drivers.  Upon information
and belief, Velocity also did not offer the health or retirement benefits that it otherwise made
available to its acknowledged employees, and it did not withhold amounts to pay for the drivers'
taxes.

## CLASS ALLEGATIONS

     41.     Plaintiffs bring this action as a class action and collective action on behalf of
themselves and a class defined as follows:

> All individuals who work or have worked as pick-up and delivery
> drivers for Velocity in the Commonwealth of Pennsylvania at any
> time within three years of date of the filing of this action.

     42.     The class is so numerous as to make it impracticable to bring all members of the
class before the Court.  The exact number of class members is unknown but can be determined
from records maintained by Velocity.

     43.     Common questions of law and fact affect the rights of each member of the class
and predominate over individual issues, and a common relief by way of damages and a
declaratory judgment are sought for the class.  Among the predominating common questions of
fact and law are:

> a.   whether Velocity misclassified class members as independent contractors;
>
> b.   whether Velocity failed to pay overtime to class members in violation of the Fair
> Labor Standards Act and Pennsylvania Minimum Wage Act;
>
> c.   whether Velocity engaged in willful conduct with respect to the misclassification
> of class members;

9

d.  whether Velocity took charges and deductions from the wages of class members in violation of the Pennsylvania Wage Payment and Collection Law;

e.  whether Velocity improperly passed on to class members certain expenses that must be borne by the employer under state and federal law; and

f.  whether class members were denied benefits to which they were entitled under ERISA.

44.    Plaintiffs' claims are typical of the claims of the class and Plaintiffs have suffered the same type of financial losses as other members of the class. Plaintiffs are drivers or former drivers employed by Velocity in Pennsylvania who have been unlawfully misclassified as independent contractors, unlawfully deprived of earned wages and compensation, and unlawfully compelled to incur expenses for the sole benefit of Velocity and that should have been paid by Velocity.

45.    Plaintiffs will assure the adequate representation of all members of the class. There are no conflicts that compromise their ability to represent the class and they have retained experienced lawyers who are well-versed in independent contractor/employee issues and class action litigation. Plaintiffs' interests in this action are antagonistic to the interests of Velocity and they will vigorously pursue the claims of the class.

46.    A class action provides a fair and efficient method of adjudicating this controversy. The substantive claims of Plaintiffs and the class are the same and will require evidentiary proof of the same kind and application of the same law. Since Velocity has misclassified all of its pick-up and delivery drivers as independent contractors, declaratory relief is appropriate with respect to the class.

47.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of this controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, and without the

10

duplication of effort and expense that numerous individual actions would entail. Prosecution of separate actions by individual members of the class would also create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Velocity.

48.     Plaintiffs believe and therefore aver that there are no unusual legal or factual issues which would cause management problems not normally and routinely handled in class actions.

49.     The identities of class members and information on damages can be determined from Velocity's records.

50.     Plaintiffs believe that this Court is an appropriate forum because Velocity employs numerous drivers and serves many customers in this County, and many of the class members reside here.

**COUNT ONE - FAIR LABOR STANDARDS ACT**
Failure to Pay Overtime

51.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

52.     At all relevant times, Velocity was an "employer" as defined under the FLSA, 29 U.S.C. § 203(d).

53.     Velocity is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

54.     At all relevant times, Plaintiffs and other drivers similarly situated were or are employees within the meaning of Section 3 of the FLSA, 29 U.S.C. § 203.

11

55.    At all relevant times, Plaintiffs and other drivers similarly situated were or are engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

56.    The overtime wage provisions set forth in the FLSA apply to Velocity and the positions held by Plaintiffs and the class are not exempt from the FLSA's overtime requirements.

57.    Velocity has engaged in a common scheme to refuse to pay Plaintiffs and the class overtime compensation for all hours worked in excess of forty each work week as required under the FLSA.

58.    Velocity has engaged in a willful practice of violating the FLSA by not paying Plaintiffs and the class overtime wages for all hours worked in excess of forty each work week.

59.    Because Velocity's violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

60.    As a result of Velocity's willful acts, Plaintiffs and the class have been deprived of overtime compensation and other wages in amounts to be determined, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

61.    The records concerning the number of excess hours worked by Plaintiffs and the class and the compensation they received are in the exclusive possession and control of Velocity and its agents.  Plaintiffs thus are unable to state, until discovery is obtained, the amount owed to Plaintiffs and the class.

62.    Plaintiffs intend to undertake appropriate action pursuant to 29 U.S.C. § 216(b) to have potential members of the class notified of the pendency of this action so that they may join this action as plaintiffs by filing with the Court written consents to joinder.

12

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of themselves and the class, pray for the following relief:

A. That the Court declare, adjudge and decree that this action is a proper FLSA collective action and certify the proposed class pursuant to 29 U.S.C. § 216;

B. That, at the earliest possible time, the Court issue notice to or permit Plaintiffs to notify all persons in the class that this civil action has been filed, the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

C. That the Court declare, adjudge, and decree that (a) Plaintiffs and members of the class were and are, at all times relevant hereto, entitled to be paid overtime for work beyond 40 hours per week; and (b) the amount of unpaid overtime to which Plaintiffs and class members are entitled is to be doubled as liquidated damages and awarded thereto;

D. An award to Plaintiffs and the class of damages and/or restitution for the amount of unpaid overtime compensation, including interest thereon, and penalties in an amount to be proven at trial;

E. Attorneys' fees and costs of the action; and

F. Such other relief as this Court shall deem just and proper.

## COUNT TWO - FAIR LABOR STANDARDS ACT
### Failure To Pay Required Taxes

63.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

64.     The regulations interpreting the FLSA provide that "[n]o deduction may be made for any tax or share of a tax which the law requires to be borne by the employer." 29 C.F.R § 531.38.

65.     Velocity has transferred to Plaintiffs and the class certain expenses of carrying on its enterprise, including taxes that the law requires to be borne by employer, by deducting such

13

amounts from Plaintiffs' and class members' paychecks or by forcing Plaintiffs' and class members

to pay those taxes out-of-pocket.

66.    Velocity's actions transferring its responsibility to pay these taxes to Plaintiffs and

the class violate the FLSA.

67.    Because Velocity's violations of the FLSA have been willful, a three-year statute of

limitations applies pursuant to 29 U.S.C. § 255.

68.    As a result of Velocity's willful acts, Plaintiffs and the class have been deprived of

compensation and other wages in amounts to be determined, and they are entitled to recovery of

such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other

compensation pursuant to 29 U.S.C. § 2l6(b).

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of themselves and the class, pray for

the following relief:

A.    That Plaintiffs' FLSA claims for failure to pay required taxes be certified as class
claims;

B.    That the Court declare, adjudge, and decree that (a) Velocity unlawfully passed on
taxes to Plaintiffs and members of the class that must be borne by the employer;

C.    An award to Plaintiffs and the class of damages and/or restitution for the amount of
such taxes Plaintiffs and the class were forced to pay, including interest thereon, and
penalties in an amount to be proven at trial;

D.    Liquidated damages;

E.    Attorneys' fees and costs of the action; and

F.    Such other relief as this Court shall deem just and proper.

14

## COUNT THREE - PENNSYLVANIA MINIMUM WAGE ACT
### Failure To Pay Overtime

69.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

70.     At all relevant times, Velocity was an "employer" as defined under the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. § 333.103(g).

71.     At all relevant times, Plaintiffs and class members were or are employees within the meaning of the PMWA, 43 P.S. § 333.103(h).

72.     The overtime wage provisions set forth in the PMWA and accompanying regulations apply to Velocity and the positions held by Plaintiffs and the class are not exempt from the PMWA's overtime requirements.

73.     Velocity has refused and failed to pay Plaintiffs overtime in the amount of one and one half times the regular rate for all hours in excess of forty each work week as required under by PMWA, as set forth at 43 P.S. § 333.104(c).

74.     Velocity has engaged in a willful practice of violating the PMWA by not paying Plaintiffs and the class overtime wages for all hours worked in excess of forty each work week.

75.     As a result of Velocity's willful acts, Plaintiffs and the class have been deprived of overtime compensation and other wages in amounts to be determined, and are entitled to recovery of such amounts, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 43 P.S. § 333.113.

15

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the class, pray for the following relief:

    A.  That Plaintiffs' PMWA claims for failure to pay overtime wages be certified as class claims;

    B.  That the Court declare, adjudge, and decree that Plaintiffs and members of the class were and are, at all times relevant hereto, entitled to be paid overtime wages for work beyond 40 hours per week;

    C.  Award to Plaintiffs and the class for damages and/or restitution for the amount of unpaid overtime compensation, including interest thereon, in an amount to be proven at trial;

    D.  Attorneys' fees and costs of the action; and

    E.  Such other relief as this Court shall deem just and proper.

## COUNT FOUR - WAGE PAYMENT AND COLLECTION LAW
### Improper Wage Withholding and Failure to Pay Amounts Owed

76.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

77.    At all times material hereto, the compensation paid by Velocity to Plaintiffs and the class for pick-up and delivery work constituted "wages" within the meaning of the Pennsylvania Wage Payment Collection Law, 43 P.S. § 260, *et seq.* (WPCL).

78.    The WPCL prohibits an employer from making any deduction from an employee's wages, except those expressly authorized by law or authorized by the Department of Labor for the convenience of the employee.  43 P.S. § 260.3(a).

79.    Velocity deducted amounts directly from the wages of plaintiffs and class members, which deductions were not authorized under Pennsylvania law or made for the convenience of the employee.

16

80.     Velocity also de facto deducted additional amounts by forcing Plaintiffs and class members to pay out-of-pocket expenses of the enterprise that it could not permissibly have deducted from their pay.

81.     Velocity's ongoing deductions and de facto deductions of amounts not authorized under Pennsylvania law from the wages of Plaintiffs and class members, as well as its failure to pay overtime and other compensation owed, constitute violations of the WPCL.

82.     As a result of the foregoing, Plaintiffs and class members have been deprived of earned wages and have incurred damages thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the class, pray for the following relief:

A.  That Plaintiffs' WPCL claims for improper wage withholding and failure to pay amounts owed be certified as class claims;

B.  That the Court declare, adjudge, and decree that Velocity (a) charged and deducted amounts and (b) failed to pay wages owed, to Plaintiffs' and the class in violation of the WPCL;

C.  Award to Plaintiffs and the class for damages and/or restitution for the amount of the unlawful deductions and charges and amounts owed but never paid, including interest thereon, in an amount to be proven at trial;

D.  Liquidated damages;

E.  Attorneys' fees and costs of the action; and

F.  Such other relief as this Court shall deem just and proper.

## COUNT FIVE - ERISA

83.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

17

84.    Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B), Plaintiffs are entitled to clarify and enforce their rights and those of the class members pertaining to all benefits owed under Velocity's employee benefit plans.

85.    Plaintiffs have either attempted to exhaust administrative remedies but were prevented by Velocity from exhausting such remedies, or exhaustion would be futile because Velocity deems Plaintiffs and other class members to be independent contractors rather than employees.

86.    By misclassifying Plaintiffs and the class, and determining them to be ineligible under its employee benefit plans, Velocity has violated, and continues to violate, the terms of those employee benefit plans and the rights of Plaintiffs and the class thereunder.

87.    Plaintiffs and the class are employees and have the right to payment of benefits pursuant to the Velocity's ERISA benefit plans.  Accordingly, under 29 U.S.C.§1132(a)(1)(B), Plaintiffs and the class are entitled to declaratory relief as to pension, health, disability, group insurance, dependent care, and/or other benefits that were not paid as a result of their improper classification and an award of such benefits or value thereof.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the class, pray for the following relief:

    A.  That Plaintiffs' ERISA claims be certified as class claims;

    B.  That the Court declare, adjudge, and decree that (a) Plaintiffs and the class are employees and (b) entitled to benefits under Velocity's ERISA benefit plans;

    C.  Award to Plaintiffs and the class damages for the amount of benefits unlawfully withheld, including interest thereon, in an amount to be proven at trial;

    D.  Attorneys' fees and costs of the action; and

18

E.  Such other relief as this Court shall deem just and proper.

## COUNT SIX - DECLARATORY RELIEF

88.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

89.     As set forth above, a dispute exists between Velocity and the Plaintiffs regarding Velocity's obligations pursuant to the FLSA, PMWA, WPCL, and ERISA.

90.     Plaintiffs and the class are "employees" whose terms and conditions of employment are subject to the governance of the FLSA, PMWA, WPCL, and ERISA.

91.     Velocity has willfully misclassified Plaintiffs and the class as independent contractors in order to avoid its obligations under these state and federal laws.

92.     Velocity's actions are ongoing and a declaration of rights is necessary to prevent further violations of state and federal wage compensation laws.

93.     Plaintiffs and the class are entitled to declaratory relief holding that they are employees within the meaning of the FLSA, PMWA, WPCL, and ERISA.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the class, pray for the following relief:

A.  That Plaintiffs' declaratory claims be certified as class claims;

B.  That the Court declare, adjudge, and decree that Plaintiffs and the class are employees within the meaning of the FLSA, MWPA, WPCL, and ERISA; and

C.  That this Court grant a declaratory judgment for Plaintiffs and the class and award them such other relief as this Court deems reasonable and just.

19

## COUNT SEVEN - RESTITUTION/BREACH OF CONTRACT

94.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

95.     This claim is asserted without regard to the characterization of Plaintiffs or the class as independent contractors. Plaintiffs bring this claim for restitution/breach of contract on behalf of the following class ("Contract Class"):

> All individuals who work or have worked as pick-up and delivery drivers for Velocity in the Commonwealth of Pennsylvania at any time within four years of date of the filing of this action.

96.     Contracts of employment were formed between the Contract Class, including Plaintiffs, and Velocity in which Velocity agreed to pay certain pre-set compensation in exchange for the performance of package pick-up and delivery services. Copies of the contracts representative of the Contract Class are attached hereto as Exhibit 1 & 2.

97.     After the work was performed, Velocity systematically and repeatedly paid less than the amounts that had been agreed upon as compensation to Plaintiffs and the Contract Class.

98.     As a result of Velocity's wrongful, intentional and willful refusal to pay Plaintiffs and the class pursuant to the agreed upon compensation terms, Velocity materially breached the terms of the contracts between itself and the Contract Class, and Plaintiffs and the Contract Class have thereby suffered damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the class, pray for the following relief:

A. That Plaintiffs' breach of contract/restitution claims be certified as class claims;

B. That the Court declare, adjudge, and decree that Velocity materially breached its employment agreements by failing to pay amounts owed for work performed;

20

C.   Award to Plaintiffs and the Contract Class restitution and damages for the amount of compensation unlawfully withheld, including interest thereon, in an amount to be proven at trial; and

D.   Such other relief as this Court shall deem just and proper.


## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

**DAMAGES EXCEED $25,000.**


Respectfully submitted,

Dated:  July 9, 2009

Edward J. Feinstein (PA # 29718)
efeinstein@stemberfeinstein.com
Janice M. Pintar (PA # 207322)
jpintar@stemberfeinstein.com
Maureen Davidson-Welling (PA # 206751)
mdavidsonwelling@stemberfeinstein.com
STEMBER FEINSTEIN DOYLE &
          PAYNE, LLC
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
(412) 281-8400 phone

John Newborg
jdnewborg@aol.com
428 Forbes Avenue
220 Lawyers Building
Pittsburgh, PA 15219
(412) 281-1106 phone


*Attorneys for the Plaintiffs,*
*individually and on behalf of other employees similarly situated*

21

REDACTED

## 2009 Contract Renewal Cover Sheet

**Location Contact:** _Tom Colaberardino_

**Contact Phone Number:** _____

**Location Code / OU:** _812_

**Driver Number:** _____

**Driver Name (print):** _____

### 2009 Contract Renewal Checklist

- [ ] **2009 IC Agreement**
- [ ] **Current Driver's License (copy front and back)**
- [ ] **Current Registration**
- [ ] **DOT forms (all vehicles 10,000 gvw or greater)**
- [ ] **DOT Medical Card (all vehicles 10,000 gvw or greater)**
- [ ] **DOT Medical Long Form (all vehicles 10,000 gvw or greater)**

### This IC's Uniform Size is:

- [ ] Small
- [ ] Medium
- [ ] Large
- [ ] X Large

- [ ] 2X Large
- [ ] 3X Large
- [ ] 4X Large
- [ ] 5X Large



LOCATION_____
DRIVER NUMBER_____

### INDEPENDENT CONTRACTOR AGREEMENT FOR TRANSPORTATION SERVICES (2009 )

THIS INDEPENDENT CONTRACTOR AGREEMENT FOR TRANSPORTATION SERVICES ("AGREEMENT") entered into as of _____, 200___, by and between _____ of _____ (the "Contractor") and Velocity Express Leasing, Inc., a Delaware corporation ("VEXL").

#### WITNESSETH:

WHEREAS, VEXL is engaged in the business of providing local delivery services with respect to general commodities, freight, documents and general merchandise, among other things (hereinafter referred to as "Items"), in the _____ area; and

WHEREAS, in connection with the operation of such business, VEXL has the need, from time to time, for the services of independent contractors to pick up, transport and deliver items for customers of VEXL; and

WHEREAS, the Contractor is engaged in providing transportation services and is willing to be available, from time to time, to undertake to perform such service for the customers of VEXL, as an independent contractor, when and as the Contractor shall choose and elect to do so.

NOW, THEREFORE, it is mutually agreed between the parties as follows:

1.    Independent Contractor Relationship. The parties agree and acknowledge that the relationship of the Contractor with VEXL hereunder is that of an independent contractor and any and all services performed or provided by the Contractor hereunder shall be performed or provided by it in such capacity. The Contractor shall in no way and for no purpose hereunder be considered an agent, servant, employee, partner or co-venturer of VEXL or be deemed to hold any relationship with VEXL other than that of an independent contractor. Neither the Contractor nor its substitute drivers, employees, helpers or servants are to be considered employees of VEXL at any time, under any circumstances or for any purpose. VEXL agrees and acknowledges that it shall have no right to direct or control the details or methods by which the Contractor performs its services hereunder, and that VEXL shall be concerned only with the results accomplished by the services performed by the Contractor and not with the means with which those results are accomplished.

Contractor shall be solely responsible for the direction and control of its substitute drivers, employees, helpers, agents or servants, including selecting, hiring, firing, supervision, directing, servicing accepted routes, setting wages, hours of work, performance standards, regulatory compliance, assigning routes of travel, providing all necessary tools or assistance to safely accomplish the work, attendance requirements and working conditions, paying, and adjusting grievances. VEXL shall not request Contractor to discontinue the use of any particular substitute driver, helper, agent or servant of Contractor in the performance of Contractor's obligations under this Agreement, except for Material Breaches of the Agreement as defined in paragraph 18; violations or breaches of customers' rules or requirements; or violations of applicable laws, governmental rules, or regulations.

2.    Term of Agreement. This Agreement shall commence as of the _____ day of _____, 20__, and shall continue in effect for a period of thirty (30) days from the date hereof, and from month to month thereafter ("Term") unless terminated by either party in accordance with paragraph 18 of this Agreement.

3.    Contractor's Control of Services Provided. During the Term of this Agreement, VEXL may, from time to time in its sole discretion, based on customer requirements, request the Contractor perform courier or delivery services by advising it of the place and time of the customer requested pick-up, the destination of the delivery, and any completion schedules and specifications being requested by the customer. The Contractor shall have the right to decline or accept any such request. Once Contractor has elected to provide transportation service Contractor shall be obligated to complete such service. Contractor upon acceptance of such request shall perform the courier or delivery service requested and, in connection therewith, shall select the route or routes to be taken. All other matters relating to the pick-up, transport and/or delivery of the Items, including, but not limited to, the priority which may be given to the pick-up or delivery of any particular item in relation to any other Item which may be picked up or delivered, shall be in the control of and at the discretion of the Contractor; provided, however, that the Contractor shall conform with any time constraints and special conditions required by VEXL's customers of which it is specifically advised at the time its services are requested by VEXL. The result of the work must conform and meet the general contractual standards and approval of VEXL's customers.

It is Contractor's responsibility to complete accepted transportation services and make any corrections with respect to customer expectations, however, if it should become necessary for VEXL to intervene, the costs to do so will be setoff against any settlement payments due Contractor.



4.    Availability of Contractor.    Contractor, as an independent contractor, is expected by VEXL to work for others and hold itself out to the public generally, in a manner consistent with the other provisions of this Agreement.  Notwithstanding the foregoing, Contractor agrees that the Department of Transportation operating authority that may apply when performing transportation services for VEXL will not apply in any manner to any other operations or services performed by Contractor. Otherwise, Contractor shall make itself available to furnish services to VEXL hereunder from time to time, and at such times, as the Contractor shall, in its discretion, elect.

5.    Contractor's Settlement.

(a)    Rate of Settlement - VEXL agrees to pay, and the Contractor agrees to accept, as full and complete settlement for each delivery made by the Contractor a mutually agreed upon sum of money which has been negotiated and shall be computed as provided for in the attached Addendum A and applicable Fuel Element Settlement Adjustment (FESA).  The term "Net Revenue" as used in this Agreement shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc) and bad debt.  VEXL shall have the right to request changes to the provisions of Addendum A.  VEXL will not be liable to Contractor for any settlement or loss associated with suspension of services due to  acts of God, war, civil disturbance, acts or  demands of any government or governmental agency, labor disturbances, fires, floods or other casualty, severe weather, or customer suspension or termination of service. The determination of when and how often VEXL may request the Contractor to perform transportation services hereunder shall be at the sole discretion of VEXL and nothing herein contained shall be construed as guaranteeing to the Contractor that VEXL will make any such requests.  Contractor understands and agrees that from time to time circumstances such as traffic or shipment relay delays, adverse weather, and other potentially cost increasing circumstances will occur and Contractor will not be compensated by VEXL for such occurrences but will in all cases be responsible for the risks of conducting Contractor's business.    Contractor hereby acknowledges that financial gain or loss may be recognized by Contractor while performing transportation services under this Agreement.

(b)    Timing of Settlement - Contractor shall provide VEXL with completed manifests and/or weekly invoices detailing the applicable sums Contractor believes are due under this Agreement. These invoices shall be sent to the attention of the VEXL Accounts Payable Department at the address given in Paragraph 24 of this Agreement.  VEXL agrees to pay approved invoices according to current corporate payment scheduling.  Contractor may also, at its option, separately contract to receive settlement payment from VEXL pursuant to which payments are reconciled by VEXL on a weekly basis in consideration of a processing fee by signing a Request for Settlement Payment Services in the form attached as Schedule A of Addendum A.

(c)    Manifest Documentation - It is the responsibility of the Contractor to provide completed manifests or bills of lading detailing items such as addresses and legible signatures as proof that pick-up and/or deliveries have been completed.  As with any business Contractor shall also be responsible for the expense of manifests or bills of lading and Contractor may purchase same from another legitimate source or such documents will be made available by VEXL for a nominal amount as part of the agreed upon administrative fee charged against Contractor's settlement payments.  VEXL reserves the right to refuse payment for services if Contractor does not submit completed manifest documentation.

6.    Fringe Benefits.  Contractor agrees and acknowledges that neither it nor its officers, directors, agents, substitute drivers, helpers, servants or employees providing services under this Agreement ("Service Employees") (1) shall have the status of an employee of VEXL or (2) shall participate in VEXL's employee benefit plans or group insurance plans or programs (including, but not limited to salary, bonus or incentive plans, stock options or purchase plans, or plans pertaining to retirement, deferred savings, disability, medical or dental plans) even if such Service Employee is considered eligible to participate pursuant to the terms of such a plan or is otherwise classified as an employee for any purpose.  Contractor shall obtain a specific written agreement from Service Employees, which sets forth the terms of this paragraph, a copy of which is to be provided to VEXL.

7.    Income and Payroll Taxes.  (a) The relationship of the Contractor with VEXL hereunder being that of an independent contractor, it is fully understood by VEXL and the Contractor that neither federal, state, nor local income taxes nor payroll taxes of any kind, including but not limited to F.I.C.A. or F.U.T.A., will be withheld or paid by VEXL on behalf of the Contractor.  The Contractor agrees (i) to pay all self-employment and other applicable taxes, including sales taxes, income taxes, social security taxes, unemployment insurance, state disability insurance and estimates thereof, and all workers compensation insurance payments as may be required under the laws, rules or regulations of any governmental agency having jurisdiction over the Contractor or his relationship with VEXL, (ii) to maintain sufficient records to enable VEXL to determine that the Contractor has satisfied its obligation to pay such taxes and other payments, and (iii) to properly withhold and pay all local, state and federal income taxes on behalf of all Service Employees.  Upon written request Contractor shall provide VEXL a copy, which evidences that such taxes have been promptly paid, including but not limited to, cancelled checks, receipts or government forms such as Employment Development Department Form DE-8.

(b) The Contractor hereby indemnifies and agrees to hold harmless VEXL against any claim, cost, penalty, loss or expense (including attorneys' fees) related to the Contractor's nonpayment or underpayment of any such taxes or payments as well as penalties and interest thereon.

8.    Contractor's Vehicle.

(a)  -  Vehicle - The Contractor shall provide and use for the performance of his services hereunder a lawfully



registered and safe vehicle capable of satisfying VEXL's and its customers' Control and Custody standards. Contractor shall direct, in all respects, the operation and maintenance of the equipment used in performance of this Agreement, which direction shall include, but not be limited to, selection of substitute drivers, helpers, places of repair, stopping, parking, replacement, maintenance and purchases of fuel, equipment, insurance (subject to Paragraph 9 following), parts and accessories. Notwithstanding the terms of this provision, the undersigned parties agree that both parties shall benefit by adhering to certain recognized industry standards and are required to satisfy customer contractual requirements regarding driver's qualifications, such as minimum age, experience, good driving records, criminal history, drug screening, etc., and that observing such standards shall protect both parties from excessive insurance rates, cancellation of insurance coverage, and contractual breach. The equipment, which Contractor uses to perform under this Agreement, shall be identified by a schedule, which shall be attached to this Agreement as Addendum B. Addendum B shall identify the vehicle(s) allocated by the Contractor for performance under this Agreement. Contractor and VEXL shall execute a Vehicle Lease Agreement with Contractor as Lessor and VEXL as Lessee. This Vehicle Lease Agreement is a part of Addendum B.

        (b)     Department of Transportation - Contractor acknowledges that under certain Department of Transportation ("DOT") regulations and guidelines, Contractor is operating pursuant to the authority granted VEXL. Contractor agrees, whether operating pursuant to VEXL DOT authority or its own authority, to create, maintain and make available to VEXL documents required for DOT compliance, including but not limited to, driver qualification files, equipment inspection reports, hours of service, and vehicle condition reports. Contractor grants VEXL the right to periodically inspect Contractor's equipment for compliance with such regulations and guidelines. Contractor also acknowledges that VEXL under certain circumstances is required to assert control of Contractor's equipment in order to comply with relevant Department of Transportation regulations and guidelines. This in no way serves to diminish Contractor's status as an independent contractor.

        (c)     Costs and Expenses - The Contractor shall be responsible for and shall pay all costs and expenses incident to the ownership/rental and operation of any vehicle used by it in the performance of its services hereunder, including, but not limited to, rental fees, registration fees, license fees, inspection fees, insurance, tolls, fines, penalties, maintenance and repair expenses, personal property or sales taxes and fuel, oil and tire expenses.

        (d)     Signage - Many of VEXL's customers have concerns regarding safety and allowing access to their workplace. Accordingly, the Contractor shall obtain appropriate signage for its motor vehicle. The Contractor shall bear the cost and expense of obtaining, affixing and removing such signage, which costs will be assessed as part of the agreed upon administrative fee charged against Contractor's settlement payments. When and if this Agreement is terminated, Contractor shall remove and return the signage to VEXL either by personal delivery or by U.S. Mail or a comparable service.

    9.     Insurance.

        (a)     Public Liability Insurance- Notwithstanding VEXL's obligation to maintain coverage for the protection of the public and not for purposes of contradiction but as additional insurance, the Contractor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Commercial Auto Liability Insurance covering Bodily Injury and Property Damage, with a limit of liability not less than $300,000 Combined Single Limit for vehicles with a gross manufacture's vehicle weight of 26,000 pounds or less and $1,000,000 Combined Single Limit for vehicles with a gross manufacture's vehicle weight in excess of 26,000 pounds. Each such policy of insurance shall name VEXL, its parent, officers, directors and affiliates as Additional Insureds on such policy. If the scope of this Agreement involves more than one vehicle, coverage must apply to all other owned or hired and non-owned vehicles. The Contractor shall provide VEXL with a customary Certificate of Insurance as evidence of such insurance. Each such insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. The Contractor shall also immediately notify VEXL of any changes in coverage, expiration, termination or cancellation of such insurance. Should Contractor fail to provide the aforementioned insurance and acceptable Additional Insured endorsement within seven days of the signing of this Agreement, VEXL may purchase this insurance coverage on Contractor's behalf and Contractor hereby voluntarily elects and authorizes deductions for the insurance coverage from settlement checks in payment thereof. All such insurance maintained by Contractor shall provide that insurance, as it applies to VEXL, shall be primary and VEXL's insurance shall be noncontributing notwithstanding any insurance VEXL maintains.

        (b)     Insurance Purchased Through VEXL - The Contractor may elect, with the prior agreement of an insurance carrier made available by VEXL's insurance broker, to purchase the required insurance (on dispatch coverage only) through such insurance carrier. In such case, the Contractor agrees to a deduction from its settlement checks for amounts covering the premiums for the insurance coverage. This option is available to reduce Contractor's cost of insurance, and for no other purpose.

        (c)     Worker's Compensation Insurance/Occupational Accident Insurance - The Contractor, at its own expense, shall keep in full force and effect during the term of this Agreement either, Worker's Compensation Insurance covering Statutory Benefits and Employers Liability with a limit of liability of not less than $100,000 per accident, $500,000 policy limit, $100,000 per employee, or Occupational Accident Insurance (OccAcc) purchased either independently or through VEXL. Contractor shall provide VEXL with a customary Certificates of Insurance as evidence of Worker's Compensation and Employers Liability Insurance or OccAcc Insurance. Each insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. The Contractor shall also immediately notify VEXL of any expiration, termination or cancellation of such insurance. Contractor shall complete the attached Addendum C indicating the



securing of Workers Compensation Insurance or the election to retain OccAcc insurance and if purchased through VEXL voluntarily agrees and authorizes deductions from settlement fees for the OccAcc coverage. Contractor agrees to assume the liability for the payment of any Workers Compensation premiums, claims, and/or /benefits and shall indemnify VEXL for any issues, disputes, or benefits associated with the same.

    (d)   Legal Cooperation - Contractor agrees, without qualification, to cooperate with and assist VEXL and its chosen attorneys in the defense of lawsuits against VEXL or its insurers, regardless of the merit of the lawsuit. VEXL agrees to reimburse Contractor for direct expenses incurred while assisting in the defense of such lawsuits.

    (e)   Insurance Companies – All insurance procured and maintained by Contractor shall be with an Insurance company having a rating of "A-" or better by A.M. Best.

    10.   Contractor's Indemnity of VEXL - To the fullest extent permitted by law, the Contractor shall be liable for all damage or injury of any nature whatsoever to all persons, firms, companies, corporations or other entities, and to all property of any kind arising out of any service performed or provided by it hereunder or occurring in connection therewith and the Contractor agrees to defend, indemnify and save and hold harmless VEXL, its officers, directors, affiliates, agent, servants and employees from all claims, costs, loss and expense (including attorney's fees) in connection therewith. The foregoing indemnity shall not apply if the loss in question is caused solely by the gross negligence of VEXL. Contractor further acknowledges and accepts that there are inherent foreseeable risks in performing the transportation services that are the subject of this Agreement, including but not limited to risk of property damage and bodily injury. Contractor voluntarily assumes such risks.

    11.   Contractor's Liability for Items.

    (a)   Contractor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Motor Truck Cargo and/or Financial Cargo Liability insurance in an amount not less than $10,000.00 per occurrence with a deductible not to exceed $100.00 per occurrence, covering loss or damage to the Items which are in or subject to the care, custody and control of the Contractor. Contractor shall provide VEXL with a customary Certificate of Insurance as evidence of such insurance and deductible. Each such insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Contractor shall be liable to VEXL for loss or damage to Items shipped under this Agreement whether or not the loss is covered by the insurance. Items of others picked up by the Contractor shall be deemed to be in the care, custody and control of the Contractor until the same shall have been delivered to, and accepted by, the designated consignee, recipient, or its authorized agent.

    (b)   Contractor may elect to participate in a Cargo Loss Waiver (CLW) program rather than procure Motor Truck Cargo and/or Financial Cargo Liability insurance. Failure of Contractor to provide VEXL with the customary Certificate of Insurance as described in subparagraph 11(a) within 7 days of the signing of this Agreement, shall be an election by Contractor to participate in the CLW program. CLW is not insurance but a waiver of VEXL's right to collect from the Contractor for the loss or damage of Items while in Contractor's custody. VEXL agrees, pursuant to the CLW, to waive Item damages/losses claimed by a customer, subject to the following terms and conditions:

       1.   Contractor pays no more than a $18.00 per week CLW fee, which fee will be deducted from Contractor's settlement check.

       2.   Item loss/damage is not the result of Contractor's willful conduct or gross negligence.

       3.   Contractor is liable for the first $100 of loss/damage to an Item, and agrees that this amount may be deducted from its settlement check.

    12.   Uniforms. In order to fulfill customer requirements including, without limitation, requests that drivers be easily identified with a uniform for security purposes, the Contractor shall furnish and maintain, at his own cost and expense, uniforms in accordance with the applicable VEXL division policy on uniforms. Costs for uniforms made available through VEXL will be assessed as part of the agreed upon administrative fee charged against Contractor's settlement payments. Contractor shall wear the appropriate uniform at all times while performing services under this Agreement. Contractor may not use VEXL's logos or uniforms other than for the purposes of providing services under this Agreement.

    13.   Equipment. The Contractor agrees that it will provide all tools necessary for providing services under this Agreement. The Contractor shall furnish and maintain, at his own cost and expense, shipment handling equipment, radios, cellular telephones, beepers, PalmPilots/scanners, and any other type of equipment as required by VEXL to communicate with VEXL and/or its customers and to handle and track shipments according to VEXL's and its customers' package tracking requirements. Contractor may lease any such equipment from VEXL under such terms and conditions set forth under the provisions of Addendum D attached hereto.

    14.   Licenses, Permits and Registrations. The Contractor shall obtain and maintain at the Contractor's expense all licenses, permits and registrations as may be required to perform the services that may be required of the Contractor under this Agreement.

    15.   Contractor's Performance. The Contractor shall, at all times, use its best efforts, ability, experience and talents in the performance of any courier and delivery services hereunder and shall do nothing nor cause anything to be done in the



performance of such services which shall unfavorably reflect upon the reputation or business practices of VEXL or its customers. Contractor shall at all times comply with all applicable laws and safety practices in the course of performing under this Agreement.

16.    Substance Abuse and Drivers Qualifications Policies.    In order to comply with applicable Department of Transportation rules and regulations and customer requirements, Contractor agrees that all Service Employees, including but not limited to Contractor, any substitute drivers, and any person having access to customer shipments or facilities will comply with VEXL's Substance Abuse Policy and Drivers Qualification Policy, referenced hereto, and all like customer qualification requirements.

17.    Confidential Information/Non-Solicitation.    In consideration of the parties' desire to execute this Agreement, and VEXL's agreement to provide the Contractor with confidential proprietary information acquired or to be acquired or developed by and belonging to or relating to VEXL or customers of Velocity Express, Inc. or any of its wholly owned subsidiaries ("VEI") including, but not limited to, methods and systems; the names and addresses of its customers and suppliers; technology used; prices charged and paid and other information, data, and documents now existing or previously developed or acquired by VEXL or VEI customers, and Contractor's recognition that  the secrecy of the Confidential Information gives VEXL or VEI customers a significant advantage in developing, marketing and sale of its trade and business,  Contractor agrees that:

(a)    It will not directly cause, permit or aid in the disclosure to or use by any person, corporation, or entity of any confidential information, at any time, for whatever reasons, except as required by law with prior written consent by VEXL;

(b)    That during the term of this Agreement and for a period of six (6) months thereafter, Contractor shall not either directly or indirectly either for itself or for any other person, firm, company or corporation, solicit, divert, take away, or provide delivery services to or for, or attempt to solicit, divert or take away any of the customers of VEI upon whom it provided delivery services to or for, or became acquainted with during the time in which it was providing services as a contractor on behalf of VEXL;

(c)    In the event of a breach or threatened breach by Contractor of any of the provisions of this Paragraph, VEXL shall be entitled to an injunction restraining Contractor from disclosing or using any such information, rendering any such service, or interfering with relationships between VEXL and VEI customers in violation of the provisions hereof.  Nothing herein, however, shall be construed as prohibiting VEXL from pursuing any other remedies available to it for such breach or threatened breach including, but not limited to, recovery of damages, costs and attorneys' fees.

18.    Termination of Agreement.

(a)    Notwithstanding anything to the contrary set forth in Section 2, this Agreement may be terminated at any time and for any reason by either party upon fourteen (14) days prior written notice to the other.

(b)    Notwithstanding anything to the contrary set forth in Section 2 or paragraph (a), VEXL shall have the right to terminate this Agreement at any time on five (5) calendar days notice in the event VEXL determines in its sole discretion that any route or routes being serviced by the Contractor hereunder do not meet the financial or budget objectives of VEXL.

(c)    Notwithstanding anything to the contrary in paragraphs (a) and (b) above, in the event either party commits a Material Breach of the terms of this Agreement, the other party shall have the right to terminate this Agreement immediately.

The term "Material Breach" shall include but not be limited to any of the following events:

(i)    the Contractor shall fail to carry and keep in full force and effect the policies of insurance required pursuant to Paragraph 8(a) and Paragraph 9 hereof, or be denied insurance coverage under INSEL;

(ii)    the Contractor fails to perform in accordance with the standard set forth by the customer and terms of this Agreement;

(iii)    the Contractor fails to perform to a customer's satisfaction;

(iv)    VEXL does not have sufficient business to engage Contractor's services under this Agreement;

(v)    use of drugs or alcohol by Contractor or its employees or subcontractors while in the performance of Contractor's services under this Agreement or a presumed positive result by virtue of a refusal to undergo a drug or alcohol test/screening;

(vi)    acting in any immoral, criminal or illegal manner by Contractor or its drivers during the Term of this Agreement;

(vii)    taking any action by Contractor or Contractor's drivers that VEXL reasonably determines to be adverse to VEXL's business, its reputation and/or its relationship with its customers;



(viii)    failing to maintain at all times a commercial or other driver's license as required to perform the services hereunder by Contractor or its drivers;

(ix)    Contractor or any of its drivers having a revoked or suspended motor vehicle license at any time during the term of this Agreement;

(x)    failing to maintain a motor vehicle record free of moving violations during the Term of this Agreement by Contractor or its drivers;

(xi)    any insolvency of the Contractor or the filing by or against Contractor under any bankruptcy related law or statute;

(xii)    failure of the Contractor or its drivers to complete all pickups and deliveries accepted hereunder in a timely manner, and without loss or damage to any property accepted for delivery;

(xiii)    failure to maintain any necessary motor carrier authority required to deliver packages hereunder by Contractor or its drivers,

(xiv)    providing false or fraudulent proof of performance of contract services; and/or

(xv)    the Contractor in any other manner fails to perform as required pursuant to the terms of this Agreement and the breach is not cured within three (3) days of receipt of notice of the breach;

(d)    If VEXL terminates this Agreement pursuant to paragraph (c) of this Section, VEXL may take possession of the items being delivered by Contractor and complete the deliveries.  Contractor agrees to allow VEXL to deduct from its settlement checks for any costs, expenses or damages incurred by VEXL as a result of Contractor's breach including, but not limited to, costs of re-handling, costs of completing deliveries, and damages paid to the shipper or consignee.

(e)    Upon the termination of this Agreement through the expiration of its term, non-renewal or as otherwise provided for in this Paragraph 18, VEXL's only liability and sole responsibility to the Contractor shall be to make payment to Contractor of unpaid sums, for services completed prior to termination, which have been incurred pursuant to Paragraph 5 hereof.

(f)    Should this Agreement be terminated by Contractor or terminated pursuant to paragraph (c) by VEXL, all Contractor start-up costs initially paid by VEXL and reimbursed by Contractor, in the first year of engagement as part of the weekly administrative services fee, which include but are not limited to drug testing, background reporting, and the annual uniform package, will be immediately due and payable pursuant to the following reimbursement fee schedule, with said fee to be deducted from Contractor's settlement fee:

- Reimbursement fee: $8.54 for each week remaining until the first anniversary of the initial engagement.

19.    Waiver.  The waiver of a breach of any of the terms or conditions hereof shall be limited to the act or acts constituting such breach and shall never be construed as being a continuing or permanent waiver of any such terms or conditions, all of which shall be and remain in full force and effect as to future acts or happenings notwithstanding any such waiver.

20.    Headings.  The headings set forth herein have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

21.    Governing Law and Choice of Forum.  The laws of the State of New Jersey, without regard to the conflicts of laws principles thereof, shall govern this Agreement, including its construction and interpretation, the rights and remedies of the parties hereunder, and all claims, controversies or disputes (whether arising in contract or tort) between the parties.  Contractor further agrees that he/she is subject to the jurisdiction of the courts of New Jersey with respect to any legal proceeding commenced to enforce any provision hereof or for any breach hereof.

22.    Entire Agreement.  This Agreement and Addenda hereto constitute the entire agreement of the parties relating to the subject matter hereof and supersedes any and all oral or written agreements or negotiations relating to any such subject matter.  Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by either party or anyone acting on behalf of any party hereto which are not embodied herein.  This Agreement supersedes any prior agreement between VEXL, its predecessors, successor or affiliates and Contractor relating to the subject matter hereof.  Any modification of or amendment to this Agreement will be effective only if it is in writing signed by the party to be charged, except that VEXL may assign this Agreement, without written confirmation from Contractor, to any corporation which controls VEXL, is controlled by or under control of VEXL, or to any corporation resulting from the merger or consolidation with VEXL and as allowed pursuant to Section 5.

**V**elocity *express*
*real time delivery*

23.   Gender, Etc.  Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders.

24.   Notice.  Any notice to be given hereunder by a party may be effected by personal delivery in writing or by registered or certified United States mail, postage prepaid.  Notices shall be addressed to the parties at their following respective addresses or at such other address as a party may designate by giving written notice in accordance with the provisions of this Paragraph.

TO:   VEXL: See below.                          TO:   CONTRACTOR: See below.

25.   Reformation and Severability.  If any provision of this Agreement shall be invalid, illegal or unenforceable, it shall to the extent possible, be modified in such a manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Agreement, and in either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

26.   Recovery of Items in Case of Emergency.  Contractor agrees that in the event of an emergency, which includes but is not be limited to a vehicle accident, occurring while Contractor is in the course of providing services under this Agreement, VEXL is herby authorized and granted permission to obtain access to and enter Contractor's vehicle to remove any items on board so as to maintain care, custody, and control protocol, assure security of the items, and complete delivery of time sensitive items.

THIS IS A LEGALLY BINDING DOCUMENT.  PLEASE READ IT CAREFULLY AND SEEK LEGAL ADVICE IF ANY PORTION OF THIS AGREEMENT IS NOT UNDERSTOOD.  THE PARTIES HERETO AGREE THAT BY SIGNING THIS AGREEMENT THEY HAVE CONSULTED WITH LEGAL COUNSEL OR HAVE WAIVED SUCH RIGHT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**VELOCITY EXPRESS LEASING, INC.**                    **CONTRACTOR**

By: _____               By: _____
         (Print Name)                                            (Print Name)

Signature: _____               Signature: _____

Address: _____               Address: _____

City/State/Zip: _____               City/State/Zip: _____

**Notice to Contractor:  Please keep copy of the Agreement and all Addendums for your records.**



**ADDENDUM A**
**RATE OF SETTLEMENT**
**Scheduled Route and Contingency On-Demand or Distribution Rates**

VEXL agrees to pay upon receipt of all required manifest documentation, and the Contractor agrees to accept, as full and complete settlement for services rendered by the Contractor a sum of money, which shall be computed as follows together with applicable Fuel Element Settlement Adjustment (FESA) and paid to the Contractor in accordance with VEXL's normal settlement procedure. The following proposed route settlement is not a guarantee but is projected based on current route structure and may vary according to changes in route structure occurring during this Agreement.

**Scheduled Route Settlement:**

Route _____     Rate per Piece/Job $_____

Route _____     Rate per Piece/Job $_____

Route _____     _____ % Net Revenue

Route _____     _____% Net Revenue

Route _____     _____% Net Revenue

**Additional Contingency Settlement for On-Demand or Distribution Work:**

VEXL may call upon Contractor as needed to provide services for unscheduled work, which will be compensated as follows:

Conjunctive On-Demand or Distribution Work:     _____% Net Revenue per Stop; or

_____$ Per mile; or

_____$ Per Stop

Non-Conjunctive On-Demand or Distribution Work:     _____% Net Revenue per Stop

_____$ Per mile; or

_____$ Per Stop

A completed manifest submitted to VEXL shall constitute an invoice for the Contractor. The Contractor's acceptance of VEXL's settlement report shall be conclusive proof of the parties' agreement to the revenue due to the Contractor, if any. If the Contractor wishes to challenge the settlement report, the Contractor must provide VEXL with a Settlement Research Form within 30 days of the date of the settlement sheet setting forth the specific reason and provision of the Research Request. The parties understand and agree that the Contractor's acknowledgement of the settlement report is general commercial practice within the delivery industry and is controlling for both parties. As such, the Contractor agrees that cashing or depositing the settlement check shall constitute final acceptance and settlement of the monies due the Contractor. The term "Net Revenue" as used above shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc) and bad debt.

Effective Date: _____     Location No. _____

Independent Contractor Signature: _____

Independent Contractor Printed Name: _____     Drv # _____

Authorized VEXL Signature: _____     Date: _____/_____



**Schedule A of Addendum A**
**Request for Settlement Payment Services**

Independent Contractor drivers have the following options for receiving settlement payments:

**Option A or B:**   Independent Contractor drivers may choose to receive settlement payment checks for services rendered under the Independent Contractor Agreement for Transportation Services on a weekly or bi-weekly basis through the Independent Contractor Payables department.  This option is offered only upon the payment by Independent Contractor drivers of a processing fee established by the Velocity Express Finance Department that is reviewed regularly and adjusted periodically in keeping with current business requirements.

**Option C:** Independent Contractor drivers may select to be paid through Accounts Payable on a 45-day payment cycle (45 days from invoice date) with all other vendors.  Independent Contractor drivers choosing this option must submit a monthly-itemized invoice with a completed W9 form (with the first invoice) to the location manager.  The invoice must contain the following information:

- Independent Contractor Name (as it appears on the tax ID)
- Address
- Tax ID#
- Dates of service
- Description of service provided (customer or route information)
- Proof of Delivery
- Amount charged for each service provided
- Total amount of charges submitted on the invoice

The location manager will review and approve the invoice (subject to FESA) for payment and forward to the Accounts Payable Department along with other Independent Contractor invoices from the location.  Settlement checks will be mailed to the Independent Contractor driver at the address specified on the W9.  Independent Contractors that select Option C will not be charged the processing fee for weekly or bi-weekly settlement checks payable in Options A or B.

**Request for Weekly Settlement Payment:**

By my signature below, I request to receive weekly/bi-weekly settlement payments for services rendered through Independent Contractor Payables and agree that the processing fee charge may be deducted from my settlement.

Independent Contractor Driver Signature _____

**Or**

**Request for Payment Through Accounts Payable:**

By my signature below, I request to receive payment for services rendered through Accounts Payable at no charge by submitting an invoice to the Velocity location manager in accordance with the instructions above.

Independent Contractor Driver Signature _____



## ADDENDUM B
## DOT REQUIRED VEHICLE LEASE AGREEMENT

This DOT Required Vehicle Lease Agreement (hereinafter referred to as "Lease Agreement") is made and entered into between **VELOCITY EXPRESS LEASING, INC.,** (hereinafter referred to as "Lessee") and _____, (hereinafter referred to as "Lessor"), this ____ day of _____, 200__.

WHEREAS, Lessee is a regulated motor carrier holding interstate operating authority issued by the Federal Highway Administration and intrastate authority issued by state agencies in which Lessee conducts intrastate operations; and,

WHEREAS, Lessor is owner of or leasing certain motor vehicles and equipment, more particularly described as:

Veh Year:_____,  Veh Make:_____  Veh Description: _____  VIN #: _____

WHEREAS, Lessor desires to operate Lessor's vehicles under the authorities of Lessee, where required; and

WHEREAS, the regulations governing use of equipment by an authorized carrier, which the authorized carrier does not own, require a written lease agreement;

NOW THEREFORE, in consideration of the mutual promises herein contained, Lessor and Lessee hereby agree as follows:

1.   **Terms of Lease Agreement:**  This Lease Agreement shall commence on date above, and shall remain in effect at least thirty (30) days and thereafter until terminated as provided herein or upon termination of the Independent Contractor Agreement for Transportation Services ("Agreement").

2.   **Termination:**  This Lease Agreement shall terminate upon termination of the Agreement.

3.   **Lessor is Independent Contractor:**  To and only to the extent required by 49 CFR § 376 Lessee hereby assumes possession, control and use of the equipment for the duration of this Lease Agreement.  As specifically provided for in 49 CFR § 376.12, nothing in the foregoing provision is intended to affect Lessor's status as an independent contractor.  All particulars regarding the extent to which Lessee exerts any control over the personal services of Lessor driver and liability associated with operation of the leased vehicle are contained in an Independent Contractor Agreement for Transportation Services entered into simultaneously herewith and this Lease Agreement confers direction and control of Lessor's equipment in Lessee only to the extent required by 49 CFR §376 et seq.

4.   **Duties of Lessee:**

    (a)  Subject to its right to delete the names of shippers and consignees shown on the freight bill and assure confidentiality, Lessee shall provide a copy of rated freight bills to Lessor upon request by Lessor where Lessor's revenue is based on a percentage of the gross revenue for a shipment.

    (b)  Lessee shall pay all yearly revenue fees imposed or assessed by any state or regulatory authority held by Lessee.

    (c)  Lessee shall provide all certificate identification required by any governmental authority, which shall be affixed to or carried in the vehicles described above during the existence of this Lease Agreement.  All such certificate identification shall remain the property of Lessee and shall be removed and returned to the Lessee upon termination of this Lease Agreement.

5.   **Duties of Lessor:**

    (a)  Lessor shall pay all costs and expenses incident to the performance of this Lease Agreement and all operating and maintenance costs for the vehicles described and used in said performance, including but not limited to, vehicle license fees, mileage taxes and any other tax including but not limited to Heavy Vehicle Tax and International Fuel Tax Agreement (IFTA), fines or fees imposed or assessed against the vehicle(s) and equipment, cargo, or Lessee by any federal or state authority as a result of an action by the Lessor, or the employees or agents of the Lessor, in the performance of the Lease Agreement.

    (b)  Lessor is not required to purchase or rent any vehicle products, vehicle equipment, or vehicle services from Lessee as a condition of entering into this Lease Agreement.

IN WITNESS WHEREOF, the said parties to this Lease Agreement have hereunto signed their names, the day and year first above written.

LESSEE:                                          LESSOR:

VELOCITY EXPRESS LEASING, INC.          _____
                                                 (Print Name Clearly)

Signature: _____     Signature: _____
Date Signed: _____     Date Signed: _____



**ADDENDUM C**

**Workers Compensation Or Occupational Accident Election Form**

I, the undersigned, hereby attest to be duly organized in the State where the majority of the Services to be performed under the Independent Contractor Agreement For Transportation Services will be preformed as a sole proprietorship/partnership/S Corporation/C Corporation/LLC. I further attest to have purchased either; Workers Compensation Insurance and Employer's Liability through a private insurance carrier or directly from the state, or elect to purchase Occupational Accident Insurance independently or as offered by Velocity Express Leasing, Inc.

I have elected the following: *(mark ONLY one)*

___ (initial)    I have procured Workers Compensation with (Name of Inc. Co.) _____

The policy number is _____

The policy expires _____(please attach copy of declaration page).

___ (initial)    I have elected to purchase Occupational Accident Insurance independently or as offered by Velocity Express Leasing, Inc.

(Consultation with your own insurance professional to determine the appropriate coverage is recommended.)

I, the undersigned, agree that if I have elected to secure Occupational Accident Insurance through Velocity Express Leasing, Inc. costs and administration fees for the same may be automatically deducted from my settlement payments. I understand I have no workers compensation coverage other than that which I have purchased myself as described above. I further understand and agree not to pursue workers compensation claims through Velocity and agree to indemnify Velocity Express Leasing, Inc. for any Workers Compensation issues, claims, disputes, or benefits.

_____

Name (Printed)

_____

Title (i.e., Owner, Partner, etc.)

_____

Name of Business (If Applicable)

_____

Date Signed



## Addendum D - Schedule D
## Equipment Form

LOCATION
CODE_____

DATE: _____     DRIVER NUMBER_____

I, _____ , acknowledge receipt of the following said equipment and agree to a deduction from my weekly settlement for the associated rental, airtime, repair and replacement costs.  I understand that I am solely responsible for the equipment and will be held accountable should it be lost, stolen or broken beyond repair. Further, I understand that should termination of contract occur, I will be expected to immediately return said equipment.  If I neglect to return the equipment, the amount necessary to replace the equipment will be due within ten (10) days of the contract termination date.  If I do not reimburse Velocity Express in full for the said equipment, I understand that all replacement costs will be deducted from the final settlement and I will be responsible for any legal fees incurred by Velocity Express in an effort to obtain cost reimbursement.

| Scanner | | Gate Card No. | |
|---|---|---|---|
| V5.0 Replacement Cost | $2500.00 | Replacement Cost | $25.00 |
| Card # | | ID Badge No. | |
| Serial Number | | Replacement Cost | $5.00 |
| V3.5 Replacement Cost | $850.00 | Vehicle Signs | VE DOT signs |
| Stylus Cost | $ 5.00 | Replacement Cost | $25.00 |
| Holster Cost | $ 50.00 | Car Charger | $83.00 |
| Repair unit (screen) | $ 250.00 | Other | |
| | | | |

Driver Signature: _____ Date: _____

VEXL Representative Signature: _____ Date: _____



**Addendum E**
**CONTROLLED SUBSTANCE AND ALCOHOL**
**TEST CONSENT AND ACKNOWLEDGMENT FOR INDEPENDENT CONTRACTORS**

I understand that because I am engaged as an independent contractor in providing transportation services, I am involved in a safety sensitive business that puts the public at risk. As such, as a condition of contractual engagement, I must voluntarily consent to and satisfactorily complete urine-screening tests to determine the presence of certain controlled substances and/or a breath, saliva, and/or blood alcohol test to determine the presence of alcohol. I further understand that all provisions of this policy apply to any and all of my own employees or subcontractors who operate on behalf of Velocity Express Leasing, Inc. pursuant to my contract.

I further understand that I must voluntarily consent to unannounced searches and inspections of myself, my clothing, vehicle (owned, non-owned, or leased vehicle), and any package, purse, briefcase, toolbox, lunch box, or other container brought onto Company premises, for the purpose of enforcing this policy.

As a candidate for contractual engagement, I understand that the presence of one or more of such controlled substances or alcohol will disqualify me from further consideration for contractual engagement.

As an incumbent independent contractor, I understand that because the safety of the public is involved, the Company has adopted a "zero tolerance" policy and that failing a test for controlled substances and/or excessive alcohol will result in immediate termination of my contract. I also agree that the Company cannot force me or my drivers to undergo a drug and/or alcohol test. I agree, however, that, because of the safety sensitive nature of my business and the services I am rendering, the Company and customer will be forced to treat my refusal to undergo a reasonable suspicion and/or accident related drug and/or alcohol test as a "presumed positive" test result and terminate my services and/or service contract.

I certify and acknowledge that I have received, read (or have had read to me), the Driver Awareness Package, this form, and the Velocity Express Leasing, Inc. Substance Abuse Policy (and the related DOT Substance Abuse Policy, if applicable), that I understand their contents and agree to comply with the terms and conditions of each or will contact a Company representative regarding information I do not understand. I agree to the release of information obtained through medical inquiries or substance screen tests by the medical examiner(s) to Velocity Express, Leasing, Inc. and all related entities or its representatives on a "need to know" basis.

I hereby agree to pay directly or authorize the Company to deduct from my settlement, the costs of any Pre-engagement Tests, Periodic Tests and Re-engagement/Follow-up Tests administered pursuant to this policy.

I also hereby authorize the Company to conduct through its designated medical examiner(s), a substance abuse screening test(s) and I release the clinic/physician and related entities, their directors, employees and agents from all legal responsibility related to providing the information obtained through the medical inquiries or screening test to the Company or other authorized entities.

_____          _____
Independent Contractor Signature                              Social Security Number

_____          _____
Witness Signature                                                        Date Signed



## INDEPENDENT CONTRACTOR AGREEMENT FOR TRANSPORTATION SERVICES (2009 )

THIS INDEPENDENT CONTRACTOR AGREEMENT FOR TRANSPORTATION SERVICES ("AGREEMENT") entered into as of _____, 200__, by and between ☒ *LEONARD J. POTESTSKY* of _____ (the "Contractor") and Velocity Express Leasing, Inc., a Delaware corporation ("VEXL").

### WITNESSETH:

WHEREAS, VEXL is engaged in the business of providing local delivery services with respect to general commodities, freight, documents and general merchandise, among other things (hereinafter referred to as "Items"), in the _____ area; and

WHEREAS, in connection with the operation of such business, VEXL has the need, from time to time, for the services of independent contractors to pick up, transport and deliver items for customers of VEXL; and

WHEREAS, the Contractor is engaged in providing transportation services and is willing to be available, from time to time, to undertake to perform such service for the customers of VEXL, as an independent contractor, when and as the Contractor shall choose and elect to do so.

NOW, THEREFORE, it is mutually agreed between the parties as follows:

1.   Independent Contractor Relationship.  The parties agree and acknowledge that the relationship of the Contractor with VEXL hereunder is that of an independent contractor and any and all services performed or provided by the Contractor hereunder shall be performed or provided by it in such capacity. The Contractor shall in no way and for no purpose hereunder be considered an agent, servant, employee, partner or co-venturer of VEXL or be deemed to hold any relationship with VEXL other than that of an independent contractor. Neither the Contractor nor its substitute drivers, employees, helpers or servants are to be considered employees of VEXL at any time, under any circumstances or for any purpose. VEXL agrees and acknowledges that it shall have no right to direct or control the details or methods by which the Contractor performs its services hereunder, and that VEXL shall be concerned only with the results accomplished by the services performed by the Contractor and not with the means with which those results are accomplished.

Contractor shall be solely responsible for the direction and control of its substitute drivers, employees, helpers, agents or servants, including selecting, hiring, firing, supervision, directing, servicing accepted routes, setting wages, hours of work, performance standards, regulatory compliance, assigning routes of travel, providing all necessary tools or assistance to safely accomplish the work, attendance requirements and working conditions, paying, and adjusting grievances. VEXL shall not request Contractor to discontinue the use of any particular substitute driver, helper, agent or servant of Contractor in the performance of Contractor's obligations under this Agreement, except for Material Breaches of the Agreement as defined in paragraph 18; violations or breaches of customers' rules or requirements; or violations of applicable laws; governmental rules, or regulations.

2.   Term of Agreement.  This Agreement shall commence as of the _____ day of _____, 20___, and shall continue in effect for a period of thirty (30) days from the date hereof, and from month to month thereafter ("Term") unless terminated by either party in accordance with paragraph 18 of this Agreement.

3.   Contractor's Control of Services Provided.  During the Term of this Agreement, VEXL may, from time to time in its sole discretion, based on customer requirements, request the Contractor perform courier or delivery services by advising it of the place and time of the customer requested pick-up, the destination of the delivery, and any completion schedules and specifications being requested by the customer. The Contractor shall have the right to decline or accept any such request. Once Contractor has elected to provide transportation service Contractor shall be obligated to complete such service. Contractor upon acceptance of such request shall perform the courier or delivery service requested and, in connection therewith, shall select the route or routes to be taken. All other matters relating to the pick-up, transport and/or delivery of the Items, including, but not limited to, the priority which may be given to the pick-up or delivery of any particular item in relation to any other item which may be picked up or delivered, shall be in the control of and at the discretion of the Contractor; provided, however, that the Contractor shall conform with any time constraints and special conditions required by VEXL's customers of which it is specifically advised at the time its services are requested by VEXL. The result of the work must conform and meet the general contractual standards and approval of VEXL's customers.

It is Contractor's responsibility to complete accepted transportation services and make any corrections with respect to customer expectations, however, if it should become necessary for VEXL to intervene, the costs to do so will be setoff against any settlement payments due Contractor.



4.    Availability of Contractor.  Contractor, as an independent contractor, is expected by VEXL to work for others and hold itself out to the public generally, in a manner consistent with the other provisions of this Agreement. Notwithstanding the foregoing, Contractor agrees that the Department of Transportation operating authority that may apply when performing transportation services for VEXL will not apply in any manner to any other operations or services performed by Contractor. Otherwise, Contractor shall make itself available to furnish services to VEXL hereunder from time to time, and at such times, as the Contractor shall, in its discretion, elect.

5.    Contractor's Settlement.

(a)    Rate of Settlement - VEXL agrees to pay, and the Contractor agrees to accept, as full and complete settlement for each delivery made by the Contractor a mutually agreed upon sum of money which has been negotiated and shall be computed as provided for in the attached Addendum A and applicable Fuel Element Settlement Adjustment (FESA). The term "Net Revenue" as used in this Agreement shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc) and bad debt. VEXL shall have the right to request changes to the provisions of Addendum A. VEXL will not be liable to Contractor for any settlement or loss associated with suspension of services due to acts of God, war, civil disturbance, acts or demands of any government or governmental agency, labor disturbances, fires, floods or other casualty, severe weather, or customer suspension or termination of service. The determination of when and how often VEXL may request the Contractor to perform transportation services hereunder shall be at the sole discretion of VEXL and nothing herein contained shall be construed as guaranteeing to the Contractor that VEXL will make any such requests. Contractor understands and agrees that from time to time circumstances such as traffic or shipment relay delays, adverse weather, and other potentially cost increasing circumstances will occur and Contractor will not be compensated by VEXL for such occurrences but will in all cases be responsible for the risks of conducting Contractor's business.  Contractor hereby acknowledges that financial gain or loss may be recognized by Contractor while performing transportation services under this Agreement.

(b)    Timing of Settlement - Contractor shall provide VEXL with completed manifests and/or weekly invoices detailing the applicable sums Contractor believes are due under this Agreement. These invoices shall be sent to the attention of the VEXL Accounts Payable Department at the address given in Paragraph 24 of this Agreement. VEXL agrees to pay approved invoices according to current corporate payment scheduling. Contractor may also, at its option, separately contract to receive settlement payment from VEXL pursuant to which payments are reconciled by VEXL on a weekly basis in consideration of a processing fee by signing a Request for Settlement Payment Services in the form attached as Schedule A of Addendum A.

(c)    Manifest Documentation - It is the responsibility of the Contractor to provide completed manifests or bills of lading detailing items such as addresses and legible signatures as proof that pick-up and/or deliveries have been completed. As with any business Contractor shall also be responsible for the expense of manifests or bills of lading and Contractor may purchase same from another legitimate source or such documents will be made available by VEXL for a nominal amount as part of the agreed upon administrative fee charged against Contractor's settlement payments. VEXL reserves the right to refuse payment for services if Contractor does not submit completed manifest documentation.

6.    Fringe Benefits. Contractor agrees and acknowledges that neither it nor its officers, directors, agents, substitute drivers, helpers, servants or employees providing services under this Agreement ("Service Employees") (1) shall have the status of an employee of VEXL or (2) shall participate in VEXL's employee benefit plans or group insurance plans or programs (including, but not limited to salary, bonus or incentive plans, stock options or purchase plans, or plans pertaining to retirement, deferred savings, disability, medical or dental plans) even if such Service Employee is considered eligible to participate pursuant to the terms of such a plan or is otherwise classified as an employee for any purpose. Contractor shall obtain a specific written agreement from Service Employees, which sets forth the terms of this paragraph, a copy of which is to be provided to VEXL.

7.    Income and Payroll Taxes.  (a) The relationship of the Contractor with VEXL hereunder being that of an independent contractor, it is fully understood by VEXL and the Contractor that neither federal, state, nor local income taxes nor payroll taxes of any kind, including but not limited to F.I.C.A. or F.U.T.A., will be withheld or paid by VEXL on behalf of the Contractor. The Contractor agrees (i) to pay all self-employment and other applicable taxes, including sales taxes, income taxes, social security taxes, unemployment insurance, state disability insurance and estimates thereof, and all workers compensation insurance payments as may be required under the laws, rules or regulations of any governmental agency having jurisdiction over the Contractor or his relationship with VEXL, (ii) to maintain sufficient records to enable VEXL to determine that the Contractor has satisfied its obligation to pay such taxes and other payments, and (iii) to properly withhold and pay all local, state and federal income taxes on behalf of all Service Employees. Upon written request Contractor shall provide VEXL a copy, which evidences that such taxes have been promptly paid, including but not limited to, cancelled checks, receipts or government forms such as Employment Development Department Form DE-8.

(b) The Contractor hereby indemnifies and agrees to hold harmless VEXL against any claim, cost, penalty, loss or expense (including attorneys' fees) related to the Contractor's nonpayment or underpayment of any such taxes or payments as well as penalties and interest thereon.

8.    Contractor's Vehicle.

(a)    Vehicle - The Contractor shall provide and use for the performance of his services hereunder a lawfully



registered and safe vehicle capable of satisfying VEXL's and its customers' Control and Custody standards. Contractor shall direct, in all respects, the operation and maintenance of the equipment used in performance of this Agreement, which direction shall include, but not be limited to, selection of substitute drivers, helpers, places of repair, stopping, parking, replacement, maintenance and purchases of fuel, equipment, insurance (subject to Paragraph 9 following), parts and accessories. Notwithstanding the terms of this provision, the undersigned parties agree that both parties shall benefit by adhering to certain recognized industry standards and are required to satisfy customer contractual requirements regarding driver's qualifications, such as minimum age, experience, good driving records, criminal history, drug screening, etc., and that observing such standards shall protect both parties from excessive insurance rates, cancellation of insurance coverage, and contractual breach. The equipment, which Contractor uses to perform under this Agreement, shall be identified by a schedule, which shall be attached as Addendum B. Addendum B shall identify the vehicle(s) allocated by the Contractor for performance under this Agreement. Contractor and VEXL shall execute a Vehicle Lease Agreement with Contractor as Lessor and VEXL as Lessee. This Vehicle Lease Agreement is a part of Addendum B.

(b)     Department of Transportation - Contractor acknowledges that under certain Department of Transportation ("DOT") regulations and guidelines, Contractor is operating pursuant to the authority granted VEXL. Contractor agrees, whether operating pursuant to VEXL DOT authority or its own authority, to create, maintain and make available to VEXL documents required for DOT compliance, including but not limited to, driver qualification files, equipment inspection reports, hours of service, and vehicle condition reports. Contractor grants VEXL the right to periodically inspect Contractor's equipment for compliance with such regulations and guidelines. Contractor also acknowledges that VEXL under certain circumstances is required to assert control of Contractor's equipment in order to comply with relevant Department of Transportation regulations and guidelines. This in no way serves to diminish Contractor's status as an independent contractor.

(c)     Costs and Expenses - The Contractor shall be responsible for and shall pay all costs and expenses incident to the ownership/rental and operation of any vehicle used by it in the performance of its services hereunder, including, but not limited to, rental fees, registration fees, license fees, inspection fees, insurance, tolls, fines, penalties, maintenance and repair expenses, personal property or sales taxes and fuel, oil and tire expenses.

(d)     Signage - Many of VEXL's customers have concerns regarding safety and allowing access to their workplace. Accordingly, the Contractor shall obtain appropriate signage for its motor vehicle. The Contractor shall bear the cost and expense of obtaining, affixing and removing such signage, which costs will be assessed as part of the agreed upon administrative fee charged against Contractor's settlement payments. When and if this Agreement is terminated, Contractor shall remove and return the signage to VEXL either by personal delivery or by U.S. Mail or a comparable service.

9.     Insurance.

(a)     Public Liability Insurance- Notwithstanding VEXL's obligation to maintain coverage for the protection of the public and not for purposes of contradiction but as additional insurance, the Contractor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Commercial Auto Liability insurance covering Bodily Injury and Property Damage, with a limit of liability not less than $300,000 Combined Single Limit for vehicles with a gross manufacture's vehicle weight of 26,000 pounds or less and $1,000,000 Combined Single Limit for vehicles with a gross manufacture's vehicle weight in excess of 26,000 pounds. Each such policy of insurance shall name VEXL, its parent, officers, directors and affiliates as Additional Insureds on such policy. If the scope of this Agreement involves more than one vehicle, coverage must apply to all other owned or hired and non-owned vehicles. The Contractor shall provide VEXL with a customary Certificate of Insurance as evidence of such insurance. Each such insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. The Contractor shall also immediately notify VEXL of any changes in coverage, expiration, termination or cancellation of such insurance. Should Contractor fail to provide the aforementioned insurance and acceptable Additional Insured endorsement within seven days of the signing of this Agreement, VEXL may purchase this insurance coverage on Contractor's behalf and Contractor hereby voluntarily elects and authorizes deductions for the insurance coverage from settlement checks in payment thereof. All such insurance maintained by Contractor shall provide that insurance, as it applies to VEXL, shall be primary and VEXL's insurance shall be noncontributing notwithstanding any insurance VEXL maintains.

(b)     Insurance Purchased Through VEXL - The Contractor may elect, with the prior agreement of an insurance carrier made available by VEXL's insurance broker, to purchase the required insurance (on dispatch coverage only) through such insurance carrier. In such case, the Contractor agrees to a deduction from its settlement checks for amounts covering the premiums for the insurance coverage. This option is available to reduce Contractor's cost of insurance, and for no other purpose.

(c)     Worker's Compensation Insurance/Occupational Accident Insurance - The Contractor, at its own expense, shall keep in full force and effect during the term of this Agreement either, Worker's Compensation Insurance covering Statutory Benefits and Employers Liability with a limit of liability of not less than $100,000 per accident, $500,000 policy limit, $100,000 per employee, or Occupational Accident Insurance (OccAcc) purchased either independently or through VEXL. Contractor shall provide VEXL with a customary Certificate of Insurance as evidence of Worker's Compensation and Employers Liability Insurance or OccAcc Insurance. Each insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. The Contractor shall also immediately notify VEXL of any expiration, termination or cancellation of such insurance. Contractor shall complete the attached Addendum C indicating the



securing of Workers Compensation Insurance or the election to retain OccAcc insurance and if purchased through VEXL voluntarily agrees and authorizes deductions from settlement fees for the OccAcc coverage. Contractor agrees to assume the liability for the payment of any Workers Compensation premiums, claims, and/or /benefits and shall indemnify VEXL for any issues, disputes, or benefits associated with the same.

        (d)   Legal Cooperation - Contractor agrees, without qualification, to cooperate with and assist VEXL and its chosen attorneys in the defense of lawsuits against VEXL or its insurers, regardless of the merit of the lawsuit. VEXL agrees to reimburse Contractor for direct expenses incurred while assisting in the defense of such lawsuits.

        (e)   Insurance Companies – All insurance procured and maintained by Contractor shall be with an insurance company having a rating of "A-" or better by A.M. Best.

    10.   Contractor's Indemnity of VEXL - To the fullest extent permitted by law, the Contractor shall be liable for all damage or injury of any nature whatsoever to all persons, firms, companies, corporations or other entities, and to all property of any kind arising out of any service performed or provided by it hereunder or occurring in connection therewith and the Contractor agrees to defend, indemnify and save and hold harmless VEXL, its officers, directors, affiliates, agent, servants and employees from all claims, costs, loss and expense (including attorney's fees) in connection therewith. The foregoing indemnity shall not apply if the loss in question is caused solely by the gross negligence of VEXL. Contractor further acknowledges and accepts that there are inherent foreseeable risks in performing the transportation services that are the subject of this Agreement, including but not limited to risk of property damage and bodily injury. Contractor voluntarily assumes such risks.

    11.   Contractor's Liability for Items.

        (a)   Contractor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Motor Truck Cargo and/or Financial Cargo Liability insurance in an amount not less than $10,000.00 per occurrence with a deductible not to exceed $100.00 per occurrence, covering loss or damage to the Items which are in or subject to the care, custody and control of the Contractor. Contractor shall provide VEXL with a customary Certificate of Insurance as evidence of such insurance and deductible. Each such insurance policy shall require the insurer to provide VEXL with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Contractor shall be liable to VEXL for loss or damage to Items shipped under this Agreement whether or not the loss is covered by the insurance. Items of others picked up by the Contractor shall be deemed to be in the care, custody and control of the Contractor until the same shall have been delivered to, and accepted by, the designated consignee, recipient, or its authorized agent.

        (b)   Contractor may elect to participate in a Cargo Loss Waiver (CLW) program rather than procure Motor Truck Cargo and/or Financial Cargo Liability insurance. Failure of Contractor to provide VEXL with the customary Certificate of Insurance as described in subparagraph 11(a) within 7 days of the signing of this Agreement, shall be an election by Contractor to participate in the CLW program. CLW is not insurance but a waiver of VEXL's right to collect from the Contractor for the loss or damage of Items while in Contractor's custody. VEXL agrees, pursuant to the CLW, to waive Item damages/losses claimed by a customer, subject to the following terms and conditions:

      1.   Contractor pays no more than a $18.00 per week CLW fee, which fee will be deducted from Contractor's settlement check.

      2.   Item loss/damage is not the result of Contractor's willful conduct or gross negligence.

      3.   Contractor is liable for the first $100 of loss/damage to an Item, and agrees that this amount may be deducted from its settlement check.

    12.   Uniforms. In order to fulfill customer requirements including, without limitation, requests that drivers be easily identified with a uniform for security purposes, the Contractor shall furnish and maintain, at his own cost and expense, uniforms in accordance with the applicable VEXL division policy on uniforms. Costs for uniforms made available through VEXL will be assessed as part of the agreed upon administrative fee charged against Contractor's settlement payments. Contractor shall wear the appropriate uniform at all times while performing services under this Agreement. Contractor may not use VEXL's logos or uniforms other than for the purposes of providing services under this Agreement.

    13.   Equipment. The Contractor agrees that it will provide all tools necessary for providing services under this Agreement. The Contractor shall furnish and maintain, at his own cost and expense, shipment handling equipment, radios, cellular telephones, beepers, PalmPilots/scanners, and any other type of equipment as required by VEXL to communicate with VEXL and/or its customers and to handle and track shipments according to VEXL's and its customers' package tracking requirements. Contractor may lease any such equipment from VEXL under such terms and conditions set forth under the provisions of Addendum D attached hereto.

    14.   Licenses, Permits and Registrations. The Contractor shall obtain and maintain at the Contractor's expense all licenses, permits and registrations as may be required to perform the services that may be required of the Contractor under this Agreement.

    15.   Contractor's Performance. The Contractor shall, at all times, use its best efforts, ability, experience and talents in the performance of any courier and delivery services hereunder and shall do nothing nor cause anything to be done in the



performance of such services which shall unfavorably reflect upon the reputation or business practices of VEXL or its customers. Contractor shall at all times comply with all applicable laws and safety practices in the course of performing under this Agreement.

16.    Substance Abuse and Drivers Qualifications Policies.    In order to comply with applicable Department of Transportation rules and regulations and customer requirements, Contractor agrees that all Service Employees, including but not limited to Contractor, any substitute drivers, and any person having access to customer shipments or facilities will comply with VEXL's Substance Abuse Policy and Drivers Qualification Policy, referenced hereto, and all like customer qualification requirements.

17.    Confidential Information/Non-Solicitation.    In consideration of the parties' desire to execute this Agreement, and VEXL's agreement to provide the Contractor with confidential proprietary information acquired or to be acquired or developed by and belonging to or relating to VEXL or customers of Velocity Express, Inc. or any of its wholly owned subsidiaries ("VEI") including, but not limited to, methods and systems; the names and addresses of its customers and suppliers; technology used; prices charged and paid and other information, data, and documents now existing or previously developed or acquired by VEXL or VEI customers, and Contractor's recognition that the secrecy of the confidential information gives VEXL or VEI customers a significant advantage in developing, marketing and sale of its trade and business, Contractor agrees that:

(a)    It will not directly cause, permit or aid in the disclosure to or use by any person, corporation, or entity of any confidential information, at any time, for whatever reasons, except as required by law with prior written consent by VEXL;

(b)    That during the term of this Agreement and for a period of six (6) months thereafter, Contractor shall not either directly or indirectly either for itself or for any other person, firm, company or corporation, solicit, divert, take away, or provide delivery services to or for, or attempt to solicit, divert or take away any of the customers of VEI upon whom it provided delivery services to or for, or became acquainted with during the time in which it was providing services as a contractor on behalf of VEXL;

(c)    In the event of a breach or threatened breach by Contractor of any of the provisions of this Paragraph, VEXL shall be entitled to an injunction restraining Contractor from disclosing or using any such information, rendering any such service, or interfering with relationships between VEXL and VEI customers in violation of the provisions hereof. Nothing herein, however, shall be construed as prohibiting VEXL from pursuing any other remedies available to it for such breach or threatened breach including, but not limited to, recovery of damages, costs and attorneys' fees.

18.    Termination of Agreement.

(a)    Notwithstanding anything to the contrary set forth in Section 2, this Agreement may be terminated at any time and for any reason by either party upon fourteen (14) days prior written notice to the other.

(b)    Notwithstanding anything to the contrary set forth in Section 2 or paragraph (a), VEXL shall have the right to terminate this Agreement at any time on five (5) calendar days notice in the event VEXL determines in its sole discretion that any route or routes being serviced by the Contractor hereunder do not meet the financial or budget objectives of VEXL.

(c)    Notwithstanding anything to the contrary in paragraphs (a) and (b) above, in the event either party commits a Material Breach of the terms of this Agreement, the other party shall have the right to terminate this Agreement immediately.

The term "Material Breach" shall include but not be limited to any of the following events:

(i)    the Contractor shall fail to carry and keep in full force and effect the policies of insurance required pursuant to Paragraph 8(a) and Paragraph 9 hereof, or be denied insurance coverage under INSEL;

(ii)    the Contractor fails to perform in accordance with the standard set forth by the customer and terms of this Agreement;

(iii)    the Contractor fails to perform to a customer's satisfaction;

(iv)    VEXL does not have sufficient business to engage Contractor's services under this Agreement;

(v)    use of drugs or alcohol by Contractor or its employees or subcontractors while in the performance of Contractor's services under this Agreement or a presumed positive result by virtue of a refusal to undergo a drug or alcohol test/screening;

(vi)    acting in any immoral, criminal or illegal manner by Contractor or its drivers during the Term of this Agreement;

(vii)    taking any action by Contractor or Contractor's drivers that VEXL reasonably determines to be adverse to VEXL's business, its reputation and/or its relationship with its customers;

**V**elocity *express*
*real time delivery*

(viii)    failing to maintain at all times a commercial or other driver's license as required to perform the services hereunder by Contractor or its drivers;

(ix)    Contractor or any of its drivers having a revoked or suspended motor vehicle license at any time during the term of this Agreement;

(x)    failing to maintain a motor vehicle record free of moving violations during the Term of this Agreement by Contractor or its drivers;

(xi)    any insolvency of the Contractor or the filing by or against Contractor under any bankruptcy related law or statute;

(xii)    failure of the Contractor or its drivers to complete all pickups and deliveries accepted hereunder in a timely manner, and without loss or damage to any property accepted for delivery;

(xiii)    failure to maintain any necessary motor carrier authority required to deliver packages hereunder by Contractor or its drivers,

(xiv)    providing false or fraudulent proof of performance of contract services; and/or

(xv)    the Contractor in any other manner fails to perform as required pursuant to the terms of this Agreement and the breach is not cured within three (3) days of receipt of notice of the breach;

(d)    If VEXL terminates this Agreement pursuant to paragraph (c) of this Section, VEXL may take possession of the items being delivered by Contractor and complete the deliveries. Contractor agrees to allow VEXL to deduct from its settlement checks for any costs, expenses or damages incurred by VEXL as a result of Contractor's breach including, but not limited to, costs of re-handling, costs of completing deliveries, and damages paid to the shipper or consignee.

(e)    Upon the termination of this Agreement through the expiration of its term, non-renewal or as otherwise provided for in this Paragraph 18, VEXL's only liability and sole responsibility to the Contractor shall be to make payment to Contractor of unpaid sums, for services completed prior to termination, which have been incurred pursuant to Paragraph 5 hereof.

(f)    Should this Agreement be terminated by Contractor or terminated pursuant to paragraph (c) by VEXL, all Contractor start-up costs initially paid by VEXL and reimbursed by Contractor, in the first year of engagement as part of the weekly administrative services fee, which include but are not limited to drug testing, background reporting, and the annual uniform package, will be immediately due and payable pursuant to the following reimbursement fee schedule, with said fee to be deducted from Contractor's settlement fee:

- Reimbursement fee: $8.54 for each week remaining until the first anniversary of the initial engagement.

19.    Waiver. The waiver of a breach of any of the terms or conditions hereof shall be limited to the act or acts constituting such breach and shall never be construed as being a continuing or permanent waiver of any such terms or conditions, all of which shall be and remain in full force and effect as to future acts or happenings notwithstanding any such waiver.

20.    Headings. The headings set forth herein have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

21.    Governing Law and Choice of Forum. The laws of the State of New Jersey, without regard to the conflicts of laws principles thereof, shall govern this Agreement, including its construction and interpretation, the rights and remedies of the parties hereunder, and all claims, controversies or disputes (whether arising in contract or tort) between the parties. Contractor further agrees that he/she is subject to the jurisdiction of the courts of New Jersey with respect to any legal proceeding commenced to enforce any provision hereof or for any breach hereof.

22.    Entire Agreement. This Agreement and Addenda hereto constitute the entire agreement of the parties relating to the subject matter hereof and supersedes any and all oral or written agreements or negotiations relating to any such subject matter. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by either party or anyone acting on behalf of any party hereto which are not embodied herein. This Agreement supersedes any prior agreement between VEXL, its predecessors, successor or affiliates and Contractor relating to the subject matter hereof. Any modification of or amendment to this Agreement will be effective only if it is in writing signed by the party to be charged, except that VEXL may assign this Agreement, without written confirmation from Contractor, to any corporation which controls VEXL, is controlled by or under control of VEXL, or to any corporation resulting from the merger of or consolidation with VEXL and as allowed pursuant to Section 5.



23. <u>Gender; Etc.</u> Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders.

24. <u>Notice.</u> Any notice to be given hereunder by a party may be effected by personal delivery in writing or by registered or certified United States mail, postage prepaid. Notices shall be addressed to the parties at their following respective addresses or at such other address as a party may designate by giving written notice in accordance with the provisions of this Paragraph.

TO:    VEXL: See below.                          TO:    CONTRACTOR: See below.

25. <u>Reformation and Severability.</u> If any provision of this Agreement shall be invalid, illegal or unenforceable, it shall to the extent possible, be modified in such a manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Agreement, and in either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

26. <u>Recovery of Items in Case of Emergency.</u> Contractor agrees that in the event of an emergency, which includes but is not be limited to a vehicle accident, occurring while Contractor is in the course of providing services under this Agreement, VEXL is herby authorized and granted permission to obtain access to and enter Contractor's vehicle to remove any items on board so as to maintain care, custody, and control protocol, assure security of the Items, and complete delivery of time sensitive items.

THIS IS A LEGALLY BINDING DOCUMENT. PLEASE READ IT CAREFULLY AND SEEK LEGAL ADVICE IF ANY PORTION OF THIS AGREEMENT IS NOT UNDERSTOOD. THE PARTIES HERETO AGREE THAT BY SIGNING THIS AGREEMENT THEY HAVE CONSULTED WITH LEGAL COUNSEL OR HAVE WAIVED SUCH RIGHT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

VELOCITY EXPRESS LEASING, INC.                   CONTRACTOR

By: _Tom Colabernino_                            By: _Leward J. Potensky_
(Print Name)                                     (Print Name)

Signature: _____                     Signature: _____

Address: _929 Beaver Ave_                         Address: _P.O. Box 99472_

City/State/Zip: _Pittsburgh, PA 15233_           City/State/Zip: _Pittsburgh, PA 15233_


**Notice to Contractor: <u>Please keep copy of the Agreement and all Addendums for your records.</u>**



**ADDENDUM A**
**RATE OF SETTLEMENT**
**Scheduled Route and Contingency On-Demand or Distribution Rates**

VEXL agrees to pay upon receipt of all required manifest documentation, and the Contractor agrees to accept, as full and complete settlement for services rendered by the Contractor a sum of money, which shall be computed as follows together with applicable Fuel Element Settlement Adjustment (FESA) and paid to the Contractor in accordance with VEXL's normal settlement procedure. The following proposed route settlement is not a guarantee but is projected based on current route structure and may vary according to changes in route structure occurring during this Agreement.

**Scheduled Route Settlement:**

Route _____    Rate per Piece/Job $ *240/ PER DAY*

Route _____    Rate per Piece/Job $ _____

Route _____    _____ % Net Revenue

Route _____    _____ % Net Revenue

Route _____    _____ % Net Revenue

**Additional Contingency Settlement for On-Demand or Distribution Work:**

VEXL may call upon Contractor as needed to provide services for unscheduled work, which will be compensated as follows:

Conjunctive On-Demand or Distribution Work:          _____ % Net Revenue per Stop; or

_____ $ Per mile; or

_____ $ Per Stop

Non-Conjunctive On-Demand or Distribution Work:          _____ % Net Revenue per Stop

_____ $ Per mile; or

_____ $ Per Stop

A completed manifest submitted to VEXL shall constitute an invoice for the Contractor. The Contractor's acceptance of VEXL's settlement report shall be conclusive proof of the parties' agreement to the revenue due to the Contractor, if any. If the Contractor wishes to challenge the settlement report, the Contractor must provide VEXL with a Settlement Research Form within 30 days of the date of the settlement sheet setting forth the specific reason and provision of the Research Request. The parties understand and agree that the Contractor's acknowledgement of the settlement report is general commercial practice within the delivery industry and is controlling for both parties. As such, the Contractor agrees that cashing or depositing the settlement check shall constitute final acceptance and settlement of the monies due the Contractor. The term "Net Revenue" as used above shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc) and bad debt.

Effective Date: *2-9-09*                                 Location No. *812*

Independent Contractor Signature: _____

Independent Contractor Printed Name: *LEONARD J. POTENSKY*          Drv # _____

Authorized VEXL Signature: _____          Date: *2-10-09*



**Schedule A of Addendum A**
**Request for Settlement Payment Services**

Independent Contractor drivers have the following options for receiving settlement payments:

**Option A or B:** Independent Contractor drivers may choose to receive settlement payment checks for services rendered under the Independent Contractor Agreement for Transportation Services on a weekly or bi-weekly basis through the Independent Contractor Payables department. This option is offered only upon the payment by Independent Contractor drivers of a processing fee established by the Velocity Express Finance Department that is reviewed regularly and adjusted periodically in keeping with current business requirements.

**Option C:** Independent Contractor drivers may select to be paid through Accounts Payable on a 45-day payment cycle (45 days from invoice date) with all other vendors. Independent Contractor drivers choosing this option must submit a monthly-itemized invoice with a completed W9 form (with the first invoice) to the location manager. The invoice must contain the following information:

- Independent Contractor Name (as it appears on the tax ID)
- Address
- Tax ID#
- Dates of service
- Description of service provided (customer or route information)
- Proof of Delivery
- Amount charged for each service provided
- Total amount of charges submitted on the invoice

The location manager will review and approve the invoice (subject to FESA) for payment and forward to the Accounts Payable Department along with other Independent Contractor invoices from the location. Settlement checks will be mailed to the Independent Contractor driver at the address specified on the W9. Independent Contractors that select Option C will not be charged the processing fee for weekly or bi-weekly settlement checks payable in Options A or B.

**Request for Weekly Settlement Payment:**

By my signature below, I request to receive weekly/bi-weekly settlement payments for services rendered through Independent Contractor Payables and agree that the processing fee charge may be deducted from my settlement.

Independent Contractor Driver Signature _____

Or

**Request for Payment Through Accounts Payable:**

By my signature below, I request to receive payment for services rendered through Accounts Payable at no charge by submitting an invoice to the Velocity location manager in accordance with the instructions above.

Independent Contractor Driver Signature _____



## ADDENDUM B
## DOT REQUIRED VEHICLE LEASE AGREEMENT

This DOT Required Vehicle Lease Agreement (hereinafter referred to as "Lease Agreement") is made and entered into between VELOCITY EXPRESS LEASING, INC., (hereinafter referred to as "Lessee") and _____, (hereinafter referred to as "Lessor"), this _____ day of _____, 200___.

WHEREAS, Lessee is a regulated motor carrier holding interstate operating authority issued by the Federal Highway Administration and intrastate authority issued by state agencies in which Lessee conducts intrastate operations; and,

WHEREAS, Lessor is owner of or leasing certain motor vehicles and equipment, more particularly described as:

Veh Year: 2004 2002 , Veh. Make: FORD CHEVY , Veh Description: CUTAWAY BOX TRUCK CARGO VAN , VIN #: ████████

WHEREAS, Lessor desires to operate Lessor's vehicles under the authorities of Lessee, where required; and

WHEREAS, the regulations governing use of equipment by an authorized carrier, which the authorized carrier does not own, require a written lease agreement;

NOW THEREFORE, in consideration of the mutual promises herein contained, Lessor and Lessee hereby agree as follows:

1.     Terms of Lease Agreement: This Lease Agreement shall commence on date above, and shall remain in effect at least thirty (30) days and thereafter until terminated as provided herein or upon termination of the Independent Contractor Agreement for Transportation Services ("Agreement").

2.     Termination: This Lease Agreement shall terminate upon termination of the Agreement.

3.     Lessor is Independent Contractor: To and only to the extent required by 49 CFR § 376 Lessee hereby assumes possession, control and use of the equipment for the duration of this Lease Agreement. As specifically provided for in 49 CFR § 376.12, nothing in the foregoing provision is intended to affect Lessor's status as an independent contractor. All particulars regarding the extent to which Lessee exerts any control over the personal services of Lessor driver and liability associated with operation of the leased vehicle are contained in an Independent Contractor Agreement for Transportation Services entered into simultaneously herewith and this Lease Agreement confers direction and control of Lessor's equipment in Lessee only to the extent required by 49 CFR §376 et seq.

4.     Duties of Lessee:
    (a) Subject to its right to delete the names of shippers and consignees shown on the freight bill and assure confidentiality, Lessee shall provide a copy of rated freight bills to Lessor upon request by Lessor where Lessor's revenue is based on a percentage of the gross revenue for a shipment.
    (b) Lessee shall pay all yearly revenue fees imposed or assessed by any state or regulatory authority held by Lessee.
    (c) Lessee shall provide all certificate identification required by any governmental authority, which shall be affixed to or carried in the vehicles described above during the existence of this Lease Agreement. All such certificate identification shall remain the property of Lessee and shall be removed and returned to the Lessee upon termination of this Lease Agreement.

5.     Duties of Lessor:
    (a) Lessor shall pay all costs and expenses incident to the performance of this Lease Agreement and all operating and maintenance costs for the vehicles described and used in said Agreement, including but not limited to, vehicle license fees, mileage taxes and any other tax including but not limited to Heavy Vehicle Tax and International Fuel Tax Agreement (IFTA), fines or fees imposed or assessed against the vehicle(s) and equipment, cargo, or Lessee by any federal or state authority as a result of an action by the Lessor, or the employees or agents of the Lessor, in the performance of the Lease Agreement.
    (b) Lessor is not required to purchase or rent any vehicle products, vehicle equipment, or vehicle services from Lessee as a condition of entering into this Lease Agreement.

IN WITNESS WHEREOF, the said parties to this Lease Agreement have hereunto signed their names, the day and year first above written.

LESSEE:

VELOCITY EXPRESS LEASING, INC.

Signature: _____

Date Signed: 2-9-09

LESSOR:

LEONARD J. POTENSKY
(Print Name Clearly)

Signature: _____

Date Signed: 2/9/09



**ADDENDUM C**

### Workers Compensation Or Occupational Accident Election Form

I, the undersigned, hereby attest to be duly organized in the State where the majority of the Services to be performed under the Independent Contractor Agreement For Transportation Services will be preformed as a sole proprietorship/partnership/S Corporation/C Corporation/LLC. I further attest to have purchased either; Workers Compensation Insurance and Employer's Liability through a private insurance carrier or directly from the state, or elect to purchase Occupational Accident Insurance independently or as offered by Velocity Express Leasing, Inc.

I have elected the following: (*mark ONLY one*)

___ (initial)    I have procured Workers Compensation with (Name of Inc. Co.) _____

The policy number is _____

The policy expires _____(please attach copy of declaration page).

_LJP_ (initial)    I have elected to purchase Occupational Accident Insurance independently or as offered by Velocity Express Leasing, Inc.

(Consultation with your own insurance professional to determine the appropriate coverage is recommended.)

I, the undersigned, agree that if I have elected to secure Occupational Accident Insurance through Velocity Express Leasing, Inc. costs and administration fees for the same may be automatically deducted from my settlement payments. I understand I have no workers compensation coverage other than that which I have purchased myself as described above. I further understand and agree not to pursue workers compensation claims through Velocity and agree to indemnify Velocity Express Leasing, Inc. for any Workers Compensation issues, claims, disputes, or benefits.

_LEONARD J. POTENSKY_
_____
Name (Printed)

_____
Title (i.e., Owner, Partner, etc.)

_____
Name of Business (If Applicable)

_____
Date Signed



## Addendum D - Schedule D
## Equipment Form

LOCATION
CODE_____

DATE: _____          DRIVER NUMBER_____

I, _____ , acknowledge receipt of the following said equipment and agree to a deduction from my weekly settlement for the associated rental, airtime, repair and replacement costs. I understand that I am solely responsible for the equipment and will be held accountable should it be lost, stolen or broken beyond repair. Further, I understand that should termination of contract occur, I will be expected to immediately return said equipment. If I neglect to return the equipment, the amount necessary to replace the equipment will be due within ten (10) days of the contract termination date. If I do not reimburse Velocity Express in full for the said equipment, I understand that all replacement costs will be deducted from the final settlement and I will be responsible for any legal fees incurred by Velocity Express in an effort to obtain cost reimbursement.

| **Scanner** | | **Gate Card No.** | |
|---|---|---|---|
| V5.0 Replacement Cost | $2500.00 | Replacement Cost | $25.00 |
| Card # | | **ID Badge No.** | |
| Serial Number | | Replacement Cost | $5.00 |
| V3.5 Replacement Cost | $850.00 | **Vehicle Signs** | VE DOT signs |
| Stylus Cost | $ 5.00 | Replacement Cost | $25.00 |
| Holster Cost | $ 50.00 | **Car Charger** | $83.00 |
| Repair unit (screen) | $ 250.00 | **Other** | |
| | | | |

Driver Signature: _____          Date: _____

VEXL Representative Signature: _____          Date: 2-9-09

REDACTED



**Addendum E**
## CONTROLLED SUBSTANCE AND ALCOHOL
## TEST CONSENT AND ACKNOWLEDGMENT FOR INDEPENDENT CONTRACTORS

I understand that because I am engaged as an independent contractor in providing transportation services, I am involved in a safety sensitive business that puts the public at risk. As such, as a condition of contractual engagement, I must voluntarily consent to and satisfactorily complete urine-screening tests to determine the presence of certain controlled substances and/or a breath, saliva, and/or blood alcohol test to determine the presence of alcohol. I further understand that all provisions of this policy apply to any and all of my own employees or subcontractors who operate on behalf of Velocity Express Leasing, Inc. pursuant to my contract.

I further understand that I must voluntarily consent to unannounced searches and inspections of myself, my clothing, vehicle (owned, non-owned, or leased vehicle), and any package, purse, briefcase, toolbox, lunch box, or other container brought onto Company premises, for the purpose of enforcing this policy.

As a candidate for contractual engagement, I understand that the presence of one or more of such controlled substances or alcohol will disqualify me from further consideration for contractual engagement.

As an incumbent independent contractor, I understand that because the safety of the public is involved, the Company has adopted a "zero tolerance" policy and that failing a test for controlled substances and/or excessive alcohol will result in immediate termination of my contract. I also agree that the Company cannot force me or my drivers to undergo a drug and/or alcohol test. I agree, however, that, because of the safety sensitive nature of my business and the services I am rendering, the Company and customer will be forced to treat my refusal to undergo a reasonable suspicion and/or accident related drug and/or alcohol test as a "presumed positive" test result and terminate my services and/or service contract.

I certify and acknowledge that I have received, read (or have had read to me), the Driver Awareness Package, this form, and the Velocity Express Leasing, Inc. Substance Abuse Policy (and the related DOT Substance Abuse Policy, if applicable), that I understand their contents and agree to comply with the terms and conditions of each or will contact a Company representative regarding information I do not understand. I agree to the release of information obtained through medical inquiries or substance screen tests by the medical examiner(s) to Velocity Express, Leasing, Inc. and all related entities or its representatives on a "need to know" basis.

I hereby agree to pay directly or authorize the Company to deduct from my settlement, the costs of any Pre-engagement Tests, Periodic Tests and Re-engagement/Follow-up Tests administered pursuant to this policy.

I also hereby authorize the Company to conduct through its designated medical examiner(s), a substance abuse screening test(s) and I release the clinic/physician and related entities, their directors, employees and agents from all legal responsibility related to providing the information obtained through the medical inquiries or screening test to the Company or other authorized entities.

_____          _____
Independent Contractor Signature                                Social Security Number

                                                                              2-9-09
_____          _____
Witness Signature                                                        Date Signed

## CONSENT TO PARTICIPATE IN LAWSUIT
## PURSUANT TO THE FAIR LABOR STANDARDS ACT

I consent to be a plaintiff in the foregoing lawsuit against Velocity Express Corporation, Velocity Express Leasing, Inc. and Velocity Express, Inc. (collectively "Velocity") in order to seek redress for violations of the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b).

I hereby designate Stember Feinstein Doyle & Payne, LLC and John Newborg, Esquire to represent me in this lawsuit.

I hereby consent and agree and opt-in the lawsuit brought against Velocity and authorize the filing and prosecution of this FLSA action in my name, on my behalf, and on behalf of those similarly situated to me.

Print Name: _Carl Nicholas Mosley_

Signature: _Carl Nicholas Mosley_

Date: _May 26, 2009_

Address: _3301 Virginia Ave_

_West Mifflin PA 15122_

## CONSENT TO PARTICIPATE IN LAWSUIT
## PURSUANT TO THE FAIR LABOR STANDARDS ACT

I consent to be a plaintiff in the foregoing lawsuit against Velocity Express Corporation, Velocity Express Leasing, Inc. and Velocity Express, Inc. (collectively "Velocity") in order to seek redress for violations of the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b).

I hereby designate Stember Feinstein Doyle & Payne, LLC and John Newborg, Esquire to represent me in this lawsuit.

I hereby consent and agree and opt-in the lawsuit brought against Velocity and authorize the filing and prosecution of this FLSA action in my name, on my behalf, and on behalf of those similarly situated to me.

Print Name: _HARLY PATTERSON_

Signature: _____

Date: _MAY 26, 2009_

Address: _238 SANTA FE. Dr._
_Bethel Park, PA. 15102_

## CONSENT TO PARTICIPATE IN LAWSUIT
## PURSUANT TO THE FAIR LABOR STANDARDS ACT

I consent to be a plaintiff in the foregoing lawsuit against Velocity Express Corporation, Velocity Express Leasing, Inc. and Velocity Express, Inc. (collectively "Velocity") in order to seek redress for violations of the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b).

I hereby designate Stember Feinstein Doyle & Payne, LLC and John Newborg, Esquire to represent me in this lawsuit.

I hereby consent and agree and opt-in the lawsuit brought against Velocity and authorize the filing and prosecution of this FLSA action in my name, on my behalf, and on behalf of those similarly situated to me.

Print Name: _LEONARD J. POTENSKY_

Signature: _[signature]_

Date: _6/6/09_

Address: _P.O. Box 99472_

_PITTSBURGH, PA 15233_

## CONSENT TO PARTICIPATE IN LAWSUIT
## PURSUANT TO THE FAIR LABOR STANDARDS ACT

I consent to be a plaintiff in the foregoing lawsuit against Velocity Express Corporation, Velocity Express Leasing, Inc. and Velocity Express, Inc. (collectively "Velocity") in order to seek redress for violations of the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b).

I hereby designate Stember Feinstein Doyle & Payne, LLC and John Newborg, Esquire to represent me in this lawsuit.

I hereby consent and agree and opt-in the lawsuit brought against Velocity and authorize the filing and prosecution of this FLSA action in my name, on my behalf, and on behalf of those similarly situated to me.

Print Name: _JAMAL R GARRISON_

Signature: _Jaml RBar_

Date: _June 11 2009_

Address: _3255 NOTTINGHAM dRIVE_
_PGH PA 15235_

CONSENT TO PARTICIPATE IN LAWSUIT
PURSUANT TO THE FAIR LABOR STANDARDS ACT

I consent to be a plaintiff in the foregoing lawsuit against Velocity Express Corporation, Velocity Express Leasing, Inc. and Velocity Express, Inc. (collectively "Velocity") in order to seek redress for violations of the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b).

I hereby designate Stember Feinstein Doyle & Payne, LLC and John Newborg, Esquire to represent me in this lawsuit.

I hereby consent and agree and opt-in the lawsuit brought against Velocity and authorize the filing and prosecution of this FLSA action in my name, on my behalf, and on behalf of those similarly situated to me.

Print Name: _Michelle Garrison_

Signature: _Michelle Garrison_

Date: _6-11-09_

Address: _3255 Nottingham Dr._
_Pgh. Pa, 15235_

## CONSENT TO PARTICIPATE IN LAWSUIT
## PURSUANT TO THE FAIR LABOR STANDARDS ACT

I consent to be a plaintiff in the foregoing lawsuit against Velocity Express Corporation, Velocity Express Leasing, Inc. and Velocity Express, Inc. (collectively "Velocity") in order to seek redress for violations of the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b).

I hereby designate Stember Feinstein Doyle & Payne, LLC and John Newborg, Esquire to represent me in this lawsuit.

I hereby consent and agree and opt-in the lawsuit brought against Velocity and authorize the filing and prosecution of this FLSA action in my name, on my behalf, and on behalf of those similarly situated to me.

Print Name: _John M Mitchell SR_

Signature: _John M M_____

Date: _6-13-2009_

Address: _804 Parkway Ave_

_Pittsburgh, PA 15235_

## CONSENT TO PARTICIPATE IN LAWSUIT
## PURSUANT TO THE FAIR LABOR STANDARDS ACT

I consent to be a plaintiff in the foregoing lawsuit against Velocity Express Corporation, Velocity Express Leasing, Inc. and Velocity Express, Inc. (collectively "Velocity") in order to seek redress for violations of the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b).

I hereby designate Stember Feinstein Doyle & Payne, LLC and John Newborg, Esquire to represent me in this lawsuit.

I hereby consent and agree and opt-in the lawsuit brought against Velocity and authorize the filing and prosecution of this FLSA action in my name, on my behalf, and on behalf of those similarly situated to me.

Print Name: _Ronald Earle Preston_

Signature: _Ronald Earle Preston_

Date: _6/11/09_

Address: _1420 Nixon Street_

_Pittsburgh PA 15233_

## VERIFICATION

I, Carl N. Mosley, have read the foregoing Complaint. The statements contained therein are true to the best of my personal knowledge, information and belief. This statement and Verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

_____
Carl N. Mosley

Dated: June 11, 2009

7/7/2009 3:48 PM  FROM: 412.281.1007  SFD&P   TO: 1-412-835-2317   PAGE: 002 OF 002

## VERIFICATION

I, Harry Patterson, have read the foregoing Complaint. The statements contained therein are true to the best of my personal knowledge, information and belief. This statement and Verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

Harry Patterson

Dated: 07/7/09

## VERIFICATION

I, Leonard Potensky, have read the foregoing Complaint. The statements contained therein are true to the best of my personal knowledge, information and belief. This statement and Verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

_____
Leonard Potensky

Dated: _6/29/09_____

## VERIFICATION

I, Jamal Garrison, have read the foregoing Complaint. The statements contained therein are true to the best of my personal knowledge, information and belief. This statement and Verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

_____
Jamal Garrison

Dated: _6/16/2009_

**VERIFICATION**

I, Michelle Garrison, have read the foregoing Complaint. The statements contained therein are true to the best of my personal knowledge, information and belief. This statement and Verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

*Michelle Garrison*
Michelle Garrison

Dated: *6-16-09*

## VERIFICATION

I, John Mitchell, have read the foregoing Complaint. The statements contained therein are true to the best of my personal knowledge, information and belief. This statement and Verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

John Mitchell

Dated: 6-13-2009

## VERIFICATION

I, Ronald Preston, have read the foregoing Complaint. The statements contained therein are true to the best of my personal knowledge, information and belief. This statement and Verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

_Ronald Preston_
Ronald Preston

Dated: 6/11/09